IN THE

## SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW-YORK,

IN MAY TERM, 1811, IN THE THIRTY-FIFTH YEAR
OF OUR INDEPENDENCE.

———

## HENDRICKS *against* THE COMMERCIAL INSURANCE COMPANY.

THIS was an action of *assumpsit* brought for a return of *premium*, on a policy of insurance, underwritten by the defendants for the plaintiff, dated the 21st of *December*, 1808, upon goods, being tin in boxes, on board of the ship *Thomas*, " at and from *Bristol* to *New-York*," valued at 9,130 dollars. Premium 10 *per cent*. " Warranted to have sailed from the port of *Bristol* between the 20th of *October*, and the 1st of *December*, 1808."

The cause was tried at the last *June* sittings, held in *New-York*, when a verdict was taken for the plaintiff, by consent, for 936 dollars and 48 cents, subject to the opinion of the court, on a case.

*Policy of insurance on goods, dated 21st of December, 1808, " at and from Bristol to New-York. Warranted to have sailed between the 20th of October, and the 1st of December, 1808." The cargo was wholly laden on board the vessel at Bristol, before the 1st of December, 1808, and the vessel sailed from Bristol for New-York, after the 1st and before the 21st of December, 1808, and arrived in safety. In an action of assumpsit brought by the insured for a return of the premium, on the ground of a non-compliance with the warranty, it was held that the warranty, as to sailing, applied only to the voyage, and not to the risk in port, and the policy attached on the goods in port; and a risk having been run, there could be no return of premium.*

VOL. VIII. A

NEW-YORK,      The policy was admitted.  The cargo insured was
May, 1811.
            laden on board the vessel at *Bristol*, before the 1st of
HENDRICKS   *December*, 1808, and the vessel sailed from *Bristol*, with
v.
COM. INS. CO. the whole of the cargo on board, after the 1st of *De-*
            *cember*, and before the 21st of *December*, 1808, and
            safely arrived in the port of *New-York*.

            *Brinkerhoff*, for the plaintiff, contended, that the policy,
            at the time it was underwritten, was an invalid con-
            tract, and being void *ab initio*, the note which was given
            for the premium was not supported by a legal consi-
            deration; and it having been paid by the plaintiff, he
            was entitled to recover the money back from the de-
            fendants.

            A warranty in a policy of insurance is a condition on
            which the contract is founded, and unless the condition
            is literally performed, the contract is the same as if it
* *Park on Ins.* never existed.*
422. (6th edit.)
            The condition may depend on the happening of an
            antecedent or of a subsequent event.

            If it depend on the happening of an antecedent event,
            and that event did not exist at the time the policy was
            underwritten, then the policy is, *ab initio*, a nullity; and
            being so, could not be the basis of a legal considera-
            tion.

            If the condition depends on the happening of a sub-
            sequent event, and that event does not happen accord-
            ing to the terms of the condition, then the contract, as
            against the insurer, is destroyed; but not being a nullity
            *ab initio*, a risk may have commenced; and in such case,
            the underwriters would be entitled to the whole, or, at
            least, a part of the premium.
† *Cowp.* 601.    In the case of *Bond* v. *Nutt*,† Lord *Mansfield* says,
            that " a warranty to depart on a particular day is a con-
‡ *Cowp.* 603.  dition precedent;"‡ and in giving his opinion further, in
            that case, he observes, " the policy was made on the

20th of *August*, 1776, upon the contingency of a fact which must have existed, one way or the other, at the time the policy was underwritten. That contingency was, that the ship should have sailed on or before the 1st of *August;* consequently, it must have taken place or not, before the 20th of *August*."*

NEW-YORK,
May, 1811.

HENDRICKS
v.
COM. INS CO.

* *Cowp.* 606.

In the present case, the policy was made on the 21st of *December*, on the contingency of the fact, that the vessel had sailed on or before the 1st of *December.* That contingency, then, must have taken place at the time the policy was underwritten, or it was a nullity. It had not taken place at the time the policy was underwritten; therefore the policy was, *ab initio*, void.

It may, perhaps, be contended by the defendants, that the policy, by force of the word " at," attached on the goods in port; and if they had been lost before the vessel sailed, the underwriter would have been liable. But this argument is founded on the supposed existence of a fact which, according to the terms of the warranty, could not, and which, in reality, did not, exist, at the time the policy was underwritten. But admitting that the goods had been lost in port before the vessel sailed, would not a non-compliance, at the time the policy was made, with an express warranty, have exonerated the underwriter from all liability for such loss? Would they not have contended that the warranty not having been performed, there was no contract between the parties ?

Assuming, then, the fact, which is admitted by the case, that there was a breach of the warranty, at the time the policy was made, there cannot be a state of facts contemplated, which could create a liability on the part of the underwriter, or, in other words, which could subject them to a risk or hazard. And if the insurers have never run any risk, the premium must be returned.

*Wells*, contra, contended, that the policy, in this case, covered the goods while in port; and also, on the voyage, provided the vessel sailed between the 20th *October* and the 1st *December*.

If the vessel has actually performed the voyage in safety, at the time the policy is underwritten, and that is not known to the underwriter, he may retain the premium. This is a matter of express stipulation in all our policies.*

*Park, 503.*
*(6th edit)*
† *Park,* 394.
*and 515. note.*

In the case of *Hogg* v. *Horner*,† the vessel was insured *at and from Lisbon* to *England;* and though she *deviated* the moment she left *Lisbon*, yet Lord *Kenyon* held, that there could be no return of premium, as there was an inception of the risk *at*, and the contract was entire.

The warranty, as to sailing on a particular day, is not a condition precedent, so as to avoid the contract where the policy is *at and from* the place; but covers the vessel in port; and during the voyage, if she sails as warranted. In *Tyrie* v. *Fletcher*,‡ the policy was at and from *London*, for 12 months, from the 19th of *August*, 1776, and Lord *Mansfield* laid it down, that where the risk is *entire*, and has once commenced, there could be no return of premium. And in answer to the position of Mr. *Wallace*, that where the policy is " at and from, provided the ship sail on or before the 1st of *August*," the whole policy would depend on the performance of the condition, he observed, " that cannot be. A loss in port *before* the day appointed for the ship's departure, can never be coupled with a contingency after the day." But he was inclined to the opinion, that there were two parts or contracts of insurance, with distinct conditions; first, the ship is insured in port, provided she is lost in port, before the 1st of *August;* second, if she is not lost in port, she is insured, *for the voyage*, from the 1st of *August* to the port specified in the policy. The loss in port must happen before the risk on the voyage could commence;

‡ *Cowp.* 666.

and the risk in port must cease the moment the risk on the voyage began.

In the case of *Bond* v. *Nutt*, the policy was like the present, " *at and from Jamaica* to *London;* warranted *to have sailed* on or before the 1st of *August*, 1776," and the policy was effected on the 20th of *August*, 1776. Lord *Mansfield* held, that "by force of the words *at and from Jamaica*, the vessel was protected in going from port to port, and *till* she sailed." And in *Tyrie* v. *Fletcher*, Mr. Justice *Aston* mentions the case of *Bond* v. *Nutt*, to show that the policy attached on the vessel in port.

Again, in *Bermon* v. *Woodbridge*,* Lord *Mansfield* refers to the case of *Bond* v. *Nutt*, to show that there were two risks, and that the policy covered the vessel while in port. Though the opinion expressed by Lord *Mansfield* in *Tyrie* v. *Fletcher*, as to the risk being divisible, has been doubted, yet this doubt relates merely to the question concerning the *apportionments* of premiums, about which many difficulties existed in the *English* courts. It is now the settled rule in *England*, that where a vessel is insured " *at* and *from* her port of departure, with a warranty to sail on or before a particular day, and she does not sail according to the warranty, there can be no return of premium; for the risk is entire and not divisible, unless there is an *express usage* to authorize an apportionment of the premium."†

The warranty, as to the time of sailing, applies to the *voyage*, not to the risk *in port*, which is a previous independent risk, whenever the policy is *at* and from a place. Indeed, if the doctrine of the plaintiff's counsel is correct, it must follow, that in every case, where there is an insurance at and from a port, with a warranty to depart with convoy, and that vessel should be lost in port, there could be no recovery, because the warranty was not performed.

*Margin notes:*

NEW-YORK, May, 1811.

HENDRICKS v. COM. INS CO.

* *Doug.* 781. 789

† *Park*, 527. 519. (6th edit.) *Marsh. on Ins.* 658   660.   (2d edit ) *Meyer* v. *Gregson*. *Long* v. *Allen.*

If, under any circumstances, the insurer might, at any' time, have been called upon to pay the whole sum insured, the *premium* is earned, and he shall not be obliged to return any part of it.* Now, in the present case, the policy attached on the goods in port; and if the goods had been lost before the vessel sailed, as if she had sunk with them in port, or been burnt, or it had become necessary to throw them overboard, the underwriters would have been liable for the loss.

* *Marshall,* 643.
2 *Magens,* 137.

In the case of *Taylor* v. *Lowell*,† in the supreme court of *Massachusetts*, the policy was *at and from Calcutta*, to a port of discharge in the *United States*. The policy was dated the 13th of *January*, 1798, and the insurer *represented*, at the time, that the ship was at *Calcutta*, in *July*, 1797, and would probably sail in *August*, 1797. She sailed on the 19th of *August* for the *United States*, but proved unseaworthy, and put back to *Calcutta*, from whence she did not sail until the 1st *February*, 1798 ; it was held, that the policy attached and covered the subject while in port, and that there could be no return of premium.

† 3 *Tyng's Rep.* 331.

VAN NESS, J. The question arising in this case, is, whether the policy ever attached upon the subject insured *;* and if it did, though only for a single moment, it it is admitted there can be no return of premium. On the part of the plaintiff, it is contended, that as the ship did not sail from the port of *Bristol*, until after the 1st *December*, the goods were never at the risk of the assurer, and the vessel and cargo having arrived in safety, the premium ought to be returned. The defendant, on the other hand, insists that the insurance being *at* and from *Bristol*, the goods were covered whilst in port, and that the warranty to have sailed, applies to the risk on the voyage, and not to the risk in port. This, at first view, would seem to be a case of difficulty, but I think,

when well understood, it is clearly with the defendant, as well upon principle as authority.

In the construction of this, as well as of every other written contract, efficacy must, if possible, be given to every part of it. If the construction relied upon by the counsel for the plaintiff be correct, then the word *at* in this policy is altogether nugatory. The insurance here, upon the face of the policy, is as well at the port of *Bristol,* as for the voyage, and we are to presume that the rate of premium was regulated accordingly. If there had not been a warranty respecting the time the vessel should sail, there could not be a return of premium. It is to be examined, therefore, whether in this case we are compelled to reject this part of the contract, as being repugnant to the terms of the warranty. That the assured contemplated that these goods should be protected at the port of *Bristol,* provided the goods were put on board the vessel there, before the 1st *December,* is not to be disputed, because such are the express terms of the contract. If the words in this warranty had been such as are ordinarily inserted, viz. warranted *" to sail"* on or before a particular day, it is settled that there can be no return of premium, even if the voyage is never commenced. This was so decided in the case of *Meyer* v. *Gregson.* (*Marsh.* 558.) *Buller,* J. said that in all insurances from *Jamaica,* the policy runs, " *at and from,"* and though in many instances the voyage has not been commenced, yet there never was an idea of the premium being returned : and to show there could be no apportionment in that case, he adds, " and no usage has been found by the jury." And in the case of *Long* v. *Allen,* (*Marsh.* 570.) the same principle was admitted, though in that case there was an apportionment of the premium, the jury having found the usage. So in the case of *Tyrie* v. *Fletcher,* (*Cowp.* 666.) Lord *Mansfield* says, " a case of general practice was put by Mr. *Dunning,* where the words of the policy are at and from, provided the ship sail on or

before the 1st of *August*. A loss in port, before the ship's departure, can never be coupled with a contingency after the day; but if a question should arise about it, as at present advised, I should incline to be of opinion that it would fall within the reasoning of the determination in *Stevenson* v. *Snow*, and that there are *two* parts or contracts of insurance with distinct conditions. The first is, I insure the ship in port, provided she is lost *in port*, before the 1st of *August;* and second, if she is not lost in port, I insure her then during her voyage, from the 1st of *August* till she makes the port specified in the policy." And here I would observe, that the case put by Mr. *Dunning*, and to which Lord *Mansfield* gives the answer, is a much stronger case than the present.

The principle upon which these cases were decided, is this, that the warranty to sail applies to the voyage, and not to the risk in port, which is a previous and independent one, whenever the policy is *at and from*. That this is the principle is apparent from the reason of inserting this kind of warranty in the policy. In *Marshall*, 253. it is said, that " the time of sailing is so material, that in many policies there is a warranty to sail on or before a certain day. Independently of the effect which a difference of seasons may have upon the risk, and of the necessity there is that the voyage shall end in a reasonable time, it is of great importance when the policy is *at and from* a place, that there be a day fixed for the ship's departure, in order that the duration of the *risk at the place* may be ascertained." If this be the true reason, as it undoubtedly is, the policy attaches the moment it is effected, and the risk having been run in port, there can be no return of premium, even if the voyage is never undertaken. Consequently, here can be no return of premium.

The rule in *England* now appears to be, to apportion the premium, where usage has settled the rule of apportionment. (*Long* v. *Allen.*) With us, however, there never is an apportionment, because we have no usage.

Lord *Mansfield* may not always have been consistent in what fell from him on the doctrine of dividing the risks and apportioning the premiums; but I believe that in every case he will be found uniformly to have considered the risk *at the port* and *on the voyage*, to be distinct; and that when the subject insured had been at the risk of the assurer for one moment, the policy attached. But it has been said that the words in this case are different from those used in the cases I have mentioned. They are so. The words here are, " warranted *to have sailed*," &c. Will this make any difference in the construction of the contract? I think not; and that the legal effect in both instances is precisely the same. In the first place, there ought not to be a different effect given to these words, because the difference in the phraseology arises altogether from a difference in the time when they are used. If a·policy be effected before the day when the vessel is warranted to sail, the words are " warranted *to sail*," &c.: because in such case the event to which they refer is yet to happen. When, however, an insurance is made upon a vessel abroad, with a warranty that she shall have sailed on a day already past, the phraseology must necessarily be varied accordingly. It would, therefore, in the case before us, have been absurd to say, " warranted *to sail* (the policy being dated 21st *December*, 1808) on or before the 1st day of *December* instant." This, then, being the reason for the difference in the words, it would seem to me to be unjust and unreasonable to give them a different effect, contrary to what must have been the con‑ templation of the parties. The reasons for inserting them in this policy were precisely the same as they would have been, if this insurance had been effected before the day when it was agreed the vessel should have departed from *Bristol*. The words (taking into view the time when this policy was effected) are substantially the same; the risk is the same: the premium of course would be the

*margin note:* NEW-YORK, May, 1811.

HENDRICKS
v.
COM. INS. CO.

NEW-YORK,
May, 1811.

HENDRICKS
v.
COM. INS. Co.

same; and yet, strange as it may seem, the legal conse-
quences, it is contended, are different.

To show that what has been said, as to the true con-
struction of these words, is correct, I refer to the case of
*Bond* v. *Nutt.* (*Cowp.* 601.) There, as in this case, the
insurance, which was " at and from," was effected after
the day stipulated for the sailing of the ship, and the
words are precisely similar to those in this policy, " war-
ranted to have sailed." Lord *Mansfield*, in the course of
his opinion, says, " The policy was made on the 20th
*August*, 1776, upon the contingency, &c. of a fact which
must have existed one way or the other, at the time the
policy was underwritten. That contingency was that the
ship should have sailed on or before the 1st *August;*
consequently it must have taken place, or not, upon the
20th of that month. The port from whence the ship
was to be insured, was, if I may use the expression, the
whole island of *Jamaica;* but from which of the ports
neither party knew; therefore they have used the words
' at and from *Jamaica*,' &c. by force of which she cer-
tainly *was protected from port to port, and till she sailed.*"
In the case of *Tyrie* v. *Fletcher*, decided about six
months after, *Aston*, J. who was a party to the decision
in *Bond* v. *Nutt*, in speaking of the latter case, says, " In
*Bond* v. *Nutt*, the losses insured against were distinct
and unconnected with each other. 1. A loss of the ship
in port, if any should happen there. 2. A loss in the
passage home, provided she sailed on a certain day.
Again, in *Bermon* v. *Woodbridge*, (*Doug.* 780.) Lord
*Mansfield*, in referring to the case of *Bond* v. *Nutt*, says,
" It was held in that case, there were two risks; at *Ja-
maica* was one; the other, viz. the risk from *Jamaica*,
depended on the contingency of the ship having sailed
on or *before the 1st August.* *That* was a condition pre-
cedent on the voyage *from Jamaica to London.*"

There can, after this, be no difference of opinion, I ima-
gine, as to what was declared to be the law in the case of

NEW-YORK,
May, 1811.

HENDRICKS
v.
COM. INS. CO.

*Bond* v. *Nutt*, and this alone would be decisive in the present case. And is not this a reasonable interpretation of this policy? It gives effect to every part of the contract, and effectuates the undisputed intention of the parties. The vessel in this case was warranted to have sailed before the 1st *December*. Now suppose she had been burnt or sunk in port, after the goods were on board, so that it became physically impossible she could comply with the warranty, can it be possible that the assurer would not have been liable for the loss? If the warranty had been " to sail," it is admitted the defendants would, in such a case, have been liable; and why not, when the words are " warranted *to have sailed?*" At the time when this policy was executed, it was unknown to both parties whether the ship and goods were in safety or not; and in such a case, it is too well settled to be any longer controverted, that the validity of the policy is not affected by the circumstance, that the loss had already happened at the time of underwriting the policy, especially, when this is matter of express stipulation.

It may be supposed that the decision in the case of *Hore* v. *Whitmore*, (*Cowp.* 784.) is opposed to the construction which I have adopted. That case turned upon a very different point. The ship sailed after the day, and was captured on the voyage, and the assured claimed as for a loss by capture. The warranty applied *to the voyage*, and being broken, the underwriters were properly held to be discharged. If the ship had been lost *in port*, before the day she was to sail, there can be no doubt the assurer would have been liable. Neither can there be a doubt that the detention, in that case, was one of the perils insured against, and for which, while it lasted, the assured might have abandoned, and thus charged the assurer with the loss in port.

There is still one ground taken by the counsel for the plaintiff which it is necessary to notice. It is urged that every warranty is a condition precedent, and that the

NEW-YORK,
May, 1811.

HENDRICKS
v.
COM. INS. CO.

condition upon the performance of which this policy was to attach is, that the ship *had sailed* on a day past. To this several answers may be given, each of which appears to me to be equally conclusive. In *Marsh.* 248, 249. warranties are said to be " either affirmative, as when the assured undertakes for the truth of some positive allegation, as that the ship sailed on such a day," (which is the present case,) " or they may be promissory, as where the assured undertakes to perform some executory stipulation, as that a ship shall sail on or before a given day," &c. But whether the warranty be the one or the other, is perfectly immaterial; both are equally conditions precedent. In case of a stipulation that a ship shall sail, &c. the warranty is a condition precedent, as much as in this case, when it was warranted that the ship had sailed. In the first, I have already shown, indeed it is admitted, that the condition applies to the risk for the voyage, and not to the risk *in port.* If the condition in this case applies to both risks, I beg to know upon what principle? Surely not because the warranty is more a condition precedent in the one case than it is in the other. Another answer is, that the risk in port is neither increased nor diminished by the performance or violation of the warranty, because the risk terminates on the day the ship is to sail, whether she commences her voyage or not. Neither the degree of danger nor the duration of it, is changed by the difference in the words of the policy. The last answer is, that this point has been solemnly adjudged otherwise, and upon principles and for reasons with which I am perfectly satisfied. My opinion, therefore, is, in every view I have been able to take of this question, that the defendants are entitled to judgment.

THOMPSON, J. and KENT, Ch. J. were of the same opinion.

NEW-YORK,
May, 1811.

HENDRICKS
v.
COM. INS. CO.

SPENCER, J. I am constrained to dissent from the opinion of the court. In my judgment, the policy in this case never attached, and the plaintiff is consequently entitled to judgment for the premium paid by him. My brethren suppose that the policy attached, retroactively, on the goods laden on board, before the first of *December;* the insurance being *at* as well as *from Bristol.* The vessel is " *warranted to have sailed* from the port of *Bristol, between the* 20*th of October and the* 1*st of December,* 1808. The contract between the parties was entered into after the day when the ship was warranted to *have sailed,* to wit, the 21st of *December,* 1808, and the ship sailed from *Bristol* after the 1st of *December,* but before the policy was subscribed. It becomes necessary to consider the nature and effect of warranties in policies, in order to show that this policy never attached.

*Marshall on Insurance,* 248. (p. 346. 2d edit. book I. c. 9. s. 1.,) gives an analysis of warranties which appears to me to be able and perspicuous. He says, " a warranty is a stipulation or agreement on the part of the insured, in nature of a condition precedent. It may be either affirmative, as where the insured undertakes for the truth of some positive allegation; as that the thing insured is neutral property, that the ship is of such a force, that she sailed or was well on such a day, &c.; or it may be promissory, as where the insured undertakes to perform some executory stipulation, as that a ship shall sail on or before a given day, that she shall depart with convoy, that she shall be manned with such a complement of men," &c.

Again, he observes, " The breach of a warranty consists either in the falsehood of an affirmative, or the non-performance of an executory stipulation;" and he adds that " in either case, the contract is void, *ab initio,* the warranty being a condition precedent. Whether the thing was material or not, whether the breach of it proceeded from fraud, negligence, misinformation, or any other

NEW-YORK,
May, 1811.

HENDRICKS
v.
COM. INS. Co.

cause, the consequence is the same. The warranty makes the contract hypothetical, that is, it shall be binding, if the warranty is complied with. With respect to the compliance with the warranties, there is no latitude, no equity; the only question is, has the thing warranted taken place or not. If it has not, the insurer is not answerable for any loss, even though it did not happen in consequence of the breach of warranty." The same principles are laid down by Lord *Mansfield*, in *Hibbert* v. *Pigou*, *Marsh*. 272. (p. 369. 2d edit.) and *Park*, 339. (p. 443. 6th edit.) Again, in the case of *De Hahn* v. *Hartley*, (1 *Term Rep.* 343.) Lord *Mansfield*, after stating the effect of a representation, proceeds, "But a warranty must be strictly complied with. A warranty in a policy of insurance is a condition or a contingency, and unless that is performed there is no contract. It is perfectly immaterial for what purpose a warranty is introduced, but being inserted, the contract does not exist, until it is literally complied with."

In the case of *Henckle* v. *The Royal Exchange Assurance Company*, (1 *Vez.* 318.) the warranty was that the ship insured was an *Ostend* ship, and it was held by Lord *Hardwicke*, that the fact being untrue, the ship was never brought within the terms of the insurance.

It appears, then, from the cases cited, that where the warranty is of a thing past or present, it is an affirmative stipulation; and the contract between the parties being hypothetical, it operates as a condition precedent; and unless the fact warranted be true, there is no contract between them. If the warranty be executory, as that the ship shall sail on a given day, and the policy be *at* and *from*, then, inasmuch as the policy immediately attaches, and the risk commences and endures until the warranty be broken by a failure of performance of the fact stipulated; and inasmuch as there can be no apportionment of the premium, on a single risk, the insured would not be entitled to a return of any part of the premium, because the executory event did not take place.

I must not, for a moment, be understood as counte- nancing the idea, that an event already past may not be the subject of insurance. Nothing is more common, and nothing can be fairer; because, although the contingency may have happened, in point of fact, yet the parties being ignorant of the event, it is, as to them, contingent, and the assurer, in such a case, takes upon him the risk, on the hypothesis, that the subject insured may be lost. In the present case, had any of the goods insured been lost in port, by any of the perils in the policy, before the 1st of *December*, and had the ship sailed pursuant to the war- ranty, the defendants would have been on the policy, and answerable for the loss; but the fact of the ship's sailing before the 1st of *December*, being a fact warranted by the insured, and being untrue at the time the contract was entered into, and the whole contract depending on the verity of the fact of the ship's having sailed before the first of *December*, the subject matter of the insurance was never brought within the terms of the insurance, and consequently there never was a contract between the parties. There is no difference between a warranty that a ship sailed on a day past, which was anterior to the po- licy, and a warranty that a ship has a particular quality, as that she is an *Ostend* ship. They are both affirmative warranties, operating as conditions precedent; and it ap- pears to me to be violating every rule, in relation to condi- tions precedent, to maintain that though they are not true, and are never performed, yet that the party who war- ranted them to be true, and stipulated that they had been performed, as the very basis of the contract on the other side, is dispensed from their performance.

The case of *Bond* v. *Nutt* (*Cowp.* 610.) has been re- lied on by the counsel on both sides, as favourable to their respective clients. The insurance was upon a ship, lost or not lost, at and from *Jamaica* to *London*, war- ranted to have sailed before the 1st of *August*, 1776. The policy was effected on the 20th of *August*. The

point was, whether the voyage was to be considered as begun from *St. Ann's* bay, from which the ship sailed the 26th of *July*, or from *Bluefields*, from which she did not sail till after the 1st of *August.* The ship was lost, and the action was to recover for the loss of the ship. The question of a return premium never arose, as the defendants paid the whole premium into court, which was taken out by the plaintiff before the trial. (*Doug.* 785. note 1.) Lord *Mansfield*, in the course of his opinion, asks, " had she or had she not sailed on or before that day ? That is the question; no matter what cause prevented her, if the fact is that she had not sailed, though she staid behind for the best reasons, the policy was void, the contingency had not happened, and the party interested had a right to say there was no contract between them."

It is impossible to find language more emphatic than that employed by his lordship; and the cases are precisely analogous in principle. It is true the insured in that case recovered on the ground that the ship had commenced her voyage before the 1st of *August.* Had it been deferred until after that day, then the observations made by Lord *Mansfield* would have been decisive.

Lord *Mansfield* may be quoted in contradiction to himself, from what fell from him in *Tyrie* v. *Fletcher.* (*Cowp.* 669, 670.) The point was, whether the risk was entire or divisible; if the latter, then the insured claimed a return of part of the premium. He observes, " a case of general practice was put by Mr. *Dunning*, where the words of the policy are *at and from, provided the ship shall sail on or before the 1st of August*, and Mr. *Wallace* supposes that the whole policy would depend upon the ship's sailing before the stated day. I do not think so ; on the contrary I think with Mr. *Dunning*, that cannot. be. A loss in port before the day appointed for the ship's departure can never be coupled with a contingency after the day ;" and he proceeds to give the inclination of his

mind, that there would be two parts or contracts of insu-
rance, the first on the ship in port, if lost before the first
of *August*, and if not lost in port, then on the voyage.
What fell from his lordship on that occasion, is correctly
considered by Mr. *Park*, 390. (6th edition, p. 523.) as
an *obiter dictum*, overruled by himself in *Meyer* v. *Greg-
son*, (*Park*, 389.) But he was not considering the case of
a warranty to sail on or before a given day. *Marshall*,
(2d edition, pp. 667. 658.) in the notes, observes of
this case that the word "provided, made the sailing
a condition on which the contract was to take effect,
and one part of the case put as repugnant to the
other, and that the word "*at*" in the policy was nugatory;
and he agrees with Mr. *Park*, that the opinion was extra-
judicial, hastily delivered, or, perhaps, not accurately re-
ported, and that it was overruled by the case of *Meyer* v.
*Gregson*. If his lordship meant to speak of a warranty,
this *dictum* of his is overthrown by the subsequent case
of *Hore* v. *Whitmore*, *Cowp*. 784.) in the decision of
which the court, including his lordship, was unanimous.
In that case the ship was warranted to sail on or before
the 26th of *July*, 1776, before which day she was re-
strained from sailing by the governor of *Jamaica*, and
detained beyond the day; the ship was insured free
from all restraints and detainments of kings, princes and
people, &c. and she would have sailed but for the re-
straint; and it was adjudged that the warranty being ex-
press, that she should depart before a certain day, must
be complied with, though the cause of the delay was one
of the risks insured against. This case furnishes a
pretty full answer to the idea that there were two dis-
tinct risks in this case, the one in port, and the other on
the voyage. My doctrine is, that there was but one risk
in port and on the voyage, depending entirely on the fact
that the ship had sailed according to the warranty. I am
again met with another *dictum* of Lord *Mansfield's*, in the
case of *Bremon* v. *Woodbridge*, (*Doug*. 751.) in which he
says, " In *Bond* v. *Nutt* it was held there were two risks;

at *Jamaica*, was one; the other, viz. the risk from *Ja-maica*, depended upon the contingency of the ship having sailed on or before the first of *August*; that was a con-dition precedent to the insurance on the voyage from *Ja-maica* to *London*." I do not intend any thing disrespect-ful to that great man, when I say, that neither his lord-ship, nor any of the judges, held any such doctrine in *Bond* v. *Nutt*. On the contrary, he emphatically said, " that if the ship did not sail before the first of *August*, the policy was void, the contingency had not happened, and the party interested had a right to say there was no contract between them." In the case of *De Hahn* v. *Hartley*, already cited, he expressed himself to the same effect as in *Cowper's* report of *Bond* v. *Nutt*.

The risk in port is either divisible or entire. If entire, and the policy attached so as to cover the goods laden on board before the first of *December*, and while the ship was in port, I cannot conceive why the risk did not endure as well in port as on the voyage. But my brethren seem to think these two risks, ac-cording to Lord *Mansfield's dictum* in *Tyrie* v. *Fletcher*, the one in port, absolutely, and the other on the voyage, contingently, if the ship sailed by the appointed day; and holding that opinion, how can it be, that the plaintiff is not to have a return of part of the premium; for it is perfectly well settled that where the voyage is divisible into distinct risks, the premium is to be apportioned ac-cording to the several risks. (*Marsh.* 655. 3 *Burr.* 1237. 1 *Bos. & Pull.* 172.) The cases of *Meyer* v. *Gregson*, and *Long* v. *Allen*, (*Marsh.* 658. 660.) which are supposed to apply to this case, are very different. In those cases the risks were single, and the warranties were executory, or warranties to sail by a given day, and not warranties that the ships had sailed. The under-writers were on the policies for the voyages, and a risk was incurred between the time of subscribing the poli-cies and the time when the future events were stipulated

to take place. In the present case, the warranty was that an event had already taken place; and on the truth of that warranty the whole policy depended.

It cannot, I think, be seriously contended, that where no risk has been run, and no fraud practised, the assurer has a right to pocket the premium. " The premium, says *Marshall*, 548. (*2d edit.* 638.) paid by the insured, and the risk which the insurer takes upon himself, are considerations each for the other ; they are correlatives, whose mutual operation constitutes the essence of the contract of insurance. The insurer shall not be exposed to the risk, without receiving the premium; nor shall he retain the premium, which was the price of the risk, if, in fact, he runs no risk at all. For wherever a man receives the money of another upon a consideration which happens to fail, or is never performed, he is under an obligation, from the ties of moral honesty and natural justice, to refund it;" and he cites a variety of cases in support of this opinion. To these cases may be added the opinion of Lord *Hardwicke*, in *Henckle* v. *Royal Exchange Assurance Company*, that, if the ship was never brought within the terms of the insurance, so that the insurer never runs any risk, the premium must be returned in an action by the assurer.

I am not aware of any adjudged case controverting the right of the insured to a return of premium, where there has been no risk, and where there exists no fraud. It would require something very authoritative to induce me to deny a recovery in case of such strong equity. I shall only add, that although this appears to the court to be a plain case for the defendants, to my understanding, the law warrants the plaintiff's recovery.

YATES, J. was of the same opinion.

Judgment for the defendants.