# CASES AT LAW

DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

# STATE OF NEW JERSEY,

## AT NOVEMBER TERM, 1871.

---

THE STATE, THE PEOPLE'S FIRE INSURANCE COMPANY, PLAINTIFFS, v. LEWIS PARKER, JR., RECEIVER OF TAXES OF THE CITY OF TRENTON, DEFENDANT.

1. The term "accumulated surplus," as applied to a stock insurance company, is the fund it has in excess of its capital stock paid in, after payment of its debts or fixed liabilities.

2. The liabilities to losses upon policies issued and unexpired, is a contingent, not a fixed liability, and does not, therefore, affect the character of the fund arising from premiums as surplus capital or accumulated surplus.

3. The usual form of fire policies being a fixed sum paid, or secured to be paid, in advance, for a definite term of insurance, the contract is entire; and the premium, when the risk is begun, is the property of the company for the purpose of taxation, if held by them subject to contingent losses.

4. The total amount of capital stock paid in, and premium and interest account, as shown by the company's statement in this case, less the sum invested in non-taxable securities, is liable to taxation.

---

Error to the Supreme Court.

See this case fully reported in 5 *Vroom* 479.

For plaintiffs, *E. T. Green* and *James Wilson.*

For defendant, *J. S. Aitkin.*

The opinion of the court was delivered by

SCUDDER, J. The plaintiffs in error are a private corporation of this state. In 1869, the defendant, as receiver of taxes of the city of Trenton, demanded of them $969.93, the amount of tax assessed upon $64,662, which was fixed by the commissioners of appeal in cases of taxation as representing the sum of their capital stock paid in, and accumulated surplus. The amount of capital stock paid in is $50,000 ; the total amount of assets, $118,449.20. The capital stock has been invested, since the organization of the company in 1865, in United States five-twenty bonds ; of the balance of assets, $13,000 is invested in New Jersey state bonds, exempt from taxation ; and the residue, $55,449.20, was, by the judgment of the Supreme Court, held liable to assessment, as accumulated surplus. This residue, as appears by the company's balance sheet of May 1st, 1869, is composed of three items, viz., bonds and mortgages, $47,800 ; corporation bonds, $6000 ; cash, $1649.20. The company insist that the sum $24,462.44 is the total amount of the earned premiums, and that this, with their capital, $50,000, represents their taxable property. Of these two sums, $63,000 is invested in exempt securities, leaving the true balance upon which tax should be paid, $11,462.44. The judgment of the Supreme Court, charging them with the large sum of $55,449.20, is assigned for error.

It is admitted that the company is taxable, under section fifteen of the act of April 11th, 1866, (*Nix. Dig.* 954,) at the full amount of their capital stock paid in, and accumulated surplus. It is not within any of the excepted cases named in said section, nor within the act of March 24th, 1864, (*Nix. Dig.* 950,) which applies only to life insurance companies.

There is no question about the capital stock, but whether all the assets of the company, in excess of their capital stock,

as shown by their statement of May 1st, 1869, ratable as accumulated surplus, is the point of controversy. These assets are not represented by the capital stock, but stand distinct from it, and beyond it; they are, therefore, in some sense, a surplus. This word is defined as "overplus;" that which remains when use is satisfied; excess beyond what is prescribed or wanted in law; the residue of an estate after the debts and legacies are paid.

"Accumulated" is simply amassed, collected, heaped up. With these definitions in mind, we have the guide to find the legislative intention. As applied to banking institutions, these words have a well-settled meaning, and this was probably in the contemplation of the legislature when framing this section, although such institutions are excepted from its provisions. The earnings of banks arising from discounts, and interest on investments, are carried into the surplus account, and paid over, after deducting expenses and ascertained losses, at certain periods, to stockholders, as dividends, reserving, however, such portion as the directors may deem proper, as a fund to increase the capital employed in conducting the business of the company, and to provide against contingent losses. This fund is called accumulated surplus. The analogy between these discounts of banks and the premiums on policies of insurance is certainly very close. One is a premium paid for a loan; the other, a premium paid for a fire risk. Both are earnings. They are earned, in the one case, when the loan is actually made; in the other, when the risk is assumed and begun. A similar disposition may be made of them. A certain portion—so much as may be thought safe in the due course of business—may be paid over to stockholders as dividends; a certain other portion, in the exercise of an honest judgment, and for better security, should be retained in the hands of the corporation, as a provision against contingent losses. This amount should always have relation to the sum of outstanding policies, and the estimated liabilities, in the usual course of business. It is thus surplus capital, or accumulated surplus, employed in conducting the business of

the company.   It stands to them in the place of an increase of capital, by calls on the stockholders, which might be necessary to cover the amount of their risks.   Instead of adding to the capital directly, by calls, these premiums are funded. The company derives income from them, and holds them equally with capital, liable for losses.   In case of banking and stock insurance companies, the provision is made against contingent and not ascertained and certain losses; not against present debts, but possible liabilities.   Debts and losses are first deducted, and the balance is held as a fund against contingencies.   As defined by the Supreme Court, it is the fund the corporation has in excess of its capital stock after payment of its debts.

It is, however, argued that from the special character of the contract between the insurer and the insured, the premiums are not earned until the risks have expired, and that unearned premiums cannot be accumulated surplus.   Such distinction between earned and unearned premiums is doubtless important in estimating the strength of the company, and in determining the propriety of making dividends among stockholders; but, in this case, it is necessary to go further, and say that unearned premiums are so charged that they cannot be considered as the property of the company for purposes of taxation.   Whose, then, is the premium when the contract of insurance is signed and delivered, and the risk is begun?   In the customary form of fire insurance policies, the contract is entire; the full premiums are paid, or secured to be paid, for the whole term that the policies run, at the time of insurance. Where the contract is entire, no apportionment or return of the premium is made after the risk has once commenced, without express stipulation.   *Tyrie* v. *Fletcher*, *Cowp.* 666; *Bermon* v. *Woodbridge*, 2 *Doug.* 781; *Hunter* v. *Wright*, 10 *B. & C.* 714; *Hendricks* v. *Commercial Insurance Company*, 8 *Johns.* 1; *Waters* v. *Allen*, 5 *Hill* 421.

The usual stipulation that in the event of the transfer of the property insured, and the termination of the insurer's risk, a part of the premium may be reclaimed, proportionate to the

time the risk has run, is but a contingency, and not such a charge upon the premium that it takes away the right of property and ownership. Such liability to return is in the same class as possible losses by fire, against which provision is made by the·capital stock, and the reserved fund of the corporation, which is called the accumulated surplus. It is not a specific charge on the premium paid, but a possible liability that may be claimed out of the general assets of the company.

Besides, this idea of the difference between earned and unearned premiums, as affecting the question of present property, is too uncertain to form a basis of taxation. It is a matter of nice calculation and adjustment, beyond the reach of assessing officers, and within the exclusive knowledge of the corporation. There are difficulties, also, that are unanswerable. Policies run for different times—some for one year; some, more; and, in certain companies, there are perpetual policies. Where, for purposes of taxation, are these premiums earned? Shall the companies, for years, hold them invested, deriving income from them, and paying no tax?

This uncertainty is opposed to the policy of this statute, as it is clearly expressed in many of its provisions, and there is no intimation of a purpose to exempt any part of such premiums from taxation.

The proviso at the end of the fifteenth section of this act, "that all premium rates held by life insurance companies shall, in no case, be considered as future premiums, but shall be included in the valuable assets of said companies," is *in pari materia*. It is the expression of an intention to bring all things held by insurance companies, that are properly ratable, within the operation of the assessment for public taxes.

The act of March 24th, 1864, which relates to corporations whose business is that of insurance on lives, is a peculiar statute, for a favored class, and the allowance of deductions of the present value of policies, as part of the liabilities of such companies, is distinct from the claim here made for allowance and

deduction of what are called unearned premiums. It is certainly an exception from the general policy of the statute in taxing private corporations. The cases cited give but little aid in settling the exact meaning of the words accumulated surplus, as used in our statute.

*Mutual Insurance Company* v. *Supervisors of Erie*, 4 *Coms.* 442, construes the particular words of the charter in question. The whole capital of the company was composed of premiums paid in and invested. These were held to be capital for the purpose of taxation. *State* v. *Tunis*, 3 *Zab.* 546, was under the tax law of 1851, and is only applicable from the use of some expressions which indicate the idea of a surplus fund in the hands of a corporation, in its relation to valuation of stock by increasing the stockholders' tax. Thus, on page 549: "If the assessment was directed to be made upon the capital stock, at its par value, there might be propriety in taxing *the surplus capital* as so much accumulated wealth; but an assessment upon the stock, at its actual value, necessarily includes the *accumulated surplus.*" Again, on the same page: "In addition to the capital stock, the bank has accumulated a fund of $46,000, which belongs to the stockholders, but has not been divided among them, being retained and used for banking purposes, and out of which losses are paid when they occur. *State* v. *Hallam*, 1 *Vroom* 405, was overruled in *Rudderow* v. *State*, 2 *Vroom* 512. In the latter case, the opinion of Justice Elmer is an exposition of the law of 1862, but does not decide the question now discussed. In *State* v. *Utter*, 5 *Vroom* 493, a definition is given of accumulated surplus, incidentally, thus: "The term 'accumulated surplus,' in its application to stock companies, is well understood to refer to the fund they have in excess of their capital and liabilities." The word "liabilities" there used, means fixed liabilities—not contingent—hence, Justice Van Syckel, who wrote the opinion in that case, when the point came up directly, as it did in the case now under review, used the corresponding and more precise expression, " the fund it has in excess of its capital stock after the payment of its debts.'

All of these former cases, so far as they apply, favor the construction last given to this expression, "accumulated surplus," in the Supreme Court, and there is no error found in their judgment.

THE CHANCELLOR, (dissenting.) I regret that I am unable to concur with my brethren in affirming this judgment. The whole question is upon the effect of the words "accumulated surplus," in the fifteenth section of the tax act of 1866. It is whether these words apply to the premiums received by an insurance company, and yet unearned, because the risks for which they were received are still running against the company.

We have to do only with the meaning of these words as used in the act. We are not to review the wisdom of the legislature in taking the capital paid and the accumulated surplus, as the proper measure of the taxable property of a private corporation, in an act providing for equal taxation on all property. Nor have we to deal with the fact that, by this measure, some property may escape taxation, either from defect in the law or difficulty in reaching it. That portion of the bills discounted, held by banks, which represents the average deposits, in all banks a large proportion of their discounts may not be taxed, because some belong to non-residents, and those of residents may not be assessed, because not given up, as, in fact, most are not. Insurance policies have a value easily ascertained, to a dollar. That value is the proportion of the premiums paid which corresponds to the unexpired time. But this is not the question before us ; that is for the legislature alone.

The term "accumulated surplus" is elliptical, and if it had no settled meaning, might as well apply to the surplus shoes and hats on hand of a manufacturing corporation, or the surplus cars or engines of a railroad company, which had been allowed to accumulate. But it has a settled and well-known technical meaning; that meaning is the surplus profits above dividends which any company has allowed to accumu-

late, or has *piled up*. This is the meaning given to it by finan-
ciers, by courts, and in legislation. It is the meaning given
to it by this court in *The State* v. *Utter*, 5 *Vroom* 489, which
defines it to be the fund in excess of capital and liabilities.
It is given to it by legislation, in this very section, in making
it the measure of assessment for companies having capital
stock, in contra-distinction to others who are assessed for the
full amount of their property and assets. Among financial
men the meaning is settled by long and uniform use; none
could or would mistake the meaning of the term, but would
apply it to surplus profits reserved from division. A vendor
of insurance stock who should represent the amount of the
company's surplus at the amount of its premium fund, would
not escape on 'Change, in London or this country, the charge of
swindling, by claiming that he did not understand the term.
Nor would even the decision in this case protect from personal
liability, directors who, in reliance on it, should divide a pre-
mium fund three times the capital, (a not unusual situation,)
leaving the capital alone to pay losses certain to occur, or a
demand for return of premium which a disclosure of the fraud
would bring down, either more than double the capital.
Even although the statute declaring this liability, if dividends
are made except from surplus profits by implication, would
authorize a dividend of the whole surplus, and the decision
in this case declares the premium fund surplus profits. And
among merchants it would be as reasonable to call the amount
received for one day's sales, the profits for that day, as to call
the premiums received by an insurance company its profits.

The liability of the company to the insured is fixed, not
contingent. That liability is to indemnify against all loss
that may occur by fire. By the doctrine of chances among a
large number of insured, the call for indemnity is not only
certain to occur, but the amount of it at any given time is
susceptible of calculation, if the premiums charged are prop-
erly based upon the real risks and expenses. That the value
of these risks in the aggregate would be difficult for an as-
sessor to estimate, made it proper for the legislature to do as

they have done, and not make the assets of such companies the basis of taxation, deducting liabilities. That such was their intention I think is demonstrated by the act of 1864, (*Nix. Dig.* 950, § 82,*) by which life insurance companies are taxed for their property and valuable assets, deducting debts and liabilities, limiting the liability on a life policy to its present value, instead of the sum for which the life is insured. Assuming that outstanding policies are liabilities that must be deducted, it does not direct that they shall be deducted, but only limits the value. That act was not repealed by the act of 1866, but remains in lieu of the provisions for which it was substituted, in the section of the act of 1862, corresponding to section fifteen in the present act, which is the same in other respects with this change. It must therefore be construed as part of the present act. No part of the premium on a perpetual policy can ever be surplus—the whole is at any time liable to be paid back on demand; it is always a debt taxable in the hands of the insured.

Courts must construe a statute according to the plain meaning of its words, when that meaning is plain, and not contradicted by any other provision in the act; these words are not. The words of a statute, when clear, are the best key to the intention of its makers. The object of using words is to express what is intended, and not to allow it to be inferred from circumstances, or supposed intentions or policy. And statutes are written and published, that by the words used, the intention of the law-giver may be known. In *Rudderow* v. *The State*, 2 *Vroom* 515, Justice Elmer, in delivering the opinion of this court, says "that no construction shall be made in opposition to the express words;" and "the legislature shall be intended to mean what they have clearly expressed, and consequently no room is left for construction." In that case, this court held that a company whose capital stock had been largely impaired, must be taxed on its original amount, and that the words of the statute could not be restrained to the supposed intention of the legislature to tax every person and corporation upon what he or it was worth, and on that only. The law

* *Rev.*, p. 1149, § 57.

should be the same in every case, without regard to who owns the gored ox. The same rules of construction should be applied for the citizen as for the government.

I think we all agree that accumulated surplus means the surplus of profits remaining after dividends accumulated for use as capital. If I could bring myself to think that the term " accumulated surplus " in this section includes all the assets of the company above its capital, not otherwise taxed, or that the unearned premiums received by an insurance company are surplus profits, or profits in any sense, I would concur in affirming the assessment made upon this company. I cannot, after great effort, bring myself to either conclusion, and therefore must dissent.

*For affirmance*—BEDLE, SCUDDER, WOODHULL, CLEMENT, KENNEDY, OGDEN, OLDEN, WALES—8

*For reversal*—The CHANCELLOR—1