[Opinion delivered June 20, 1880.]

---

THE MERCHANTS' INS. CO. v. THOMAS DWYER.

(Case No. 2954.)

1. INSURANCE — APPLICATION NO PART OF POLICY.— Where there are no words of reference to the application in the policy it forms no part thereof. If the insurer desires to make it so, he must refer to it, and cannot claim that it is by implication to be treated as a part of the policy. 7 Lans. (N. Y.), 452.

2. SAME — UNTRUE STATEMENT IN APPLICATION.— An untrue or fraud-ulent statement on the part of the assured, in his application for the policy of insurance, of a fact material to the risk, does not avoid the policy when either the company or its agent was in-formed of, and knew the real facts, at the time when the contract was made and the premium paid. Wood on Fire Ins., 277.

3. SAME — REPRESENTATIONS AS TO OWNERSHIP OF THE PROPERTY IN-SURED.— The surviving husband, having possession of the com-munity property of himself and deceased wife, with the right of

disposition of it for the payment of his own debts, and in the settlement of his business, has an insurable interest therein, and representing himself the owner of it, in taking out a policy·of insurance thereon, was not such a misrepresentation of ownership as would vitiate the policy.   Jones v. Jones, 15 Tex., 148; Flanders on Insurance, 281; Wood on Ins., 297, 414.

4. SAME — EXPERT TESTIMONY — INCREASED RISK.— The question of increased risk, in a suit on a policy of fire insurance, is one for the jury, and experts are not permitted to state their conclusions upon the issue whether the risk was increased, when that depends upon facts which involve no peculiar science or information, but are within the common knowledge of men.   Lyman v. The State Mutual Ins. Co., 14 Allen (Mass.), 329.

5. INCREASED RISK — CHARGE OF THE COURT — 'WAIVER.— Where there is a proviso, that, if the risk is increased, the policy is void, it is error for the court to instruct the jury that "if the defendant, by its agents, acting within the scope of their authority, had actual knowledge, notice or reasonable information of the plaintiff having permitted the erection of the ten-pin alley in proximity to the store, and if with such knowledge and information they made no objection thereto, but continued knowingly to earn and receive the premium as if the policy were still in full force, or by the conduct of its agents, acting within the scope of their authority, the defendant induced the plaintiff to believe that the said erection of the ten-pin alley did not, in their view, materially increase the risk or avoid the policy, then the defendant would be estopped and precluded from setting up the avoidance of the policy by reason thereof."   If building the ten-pin alley increased the risk it rendered the policy void, and mere silence on the part of the company, failure to give notice, make objection or return any part of the premium will not constitute a waiver of the forfeiture occasioned by the increased risk.   Texas Banking and Insurance Co. v. Hutchins, 53 Tex., 61; Banking Co. v. Stone, 49 Tex., 13; Insurance Co. v. Lacroix, 45 Tex., 170; N. Y. Central Ins. Co. v. Watson, 23 Mich , 486; Hoyet v. Gilman, 8 Mass., 339; Hendricks v. Commercial Ins. Co., 8 Johns., 1; Waters v. Allen, 5 Hill, 424; 99 Mass., 160.

6. PROOF OF LOSS — WAIVER.— Where defective proofs have been made, a refusal to pay on special grounds, or a denial of liability, unless predicated upon the defects in the preliminary proofs, is a waiver of all defects therein, and estops the insurer from insisting upon them to defeat his liability.   Wood on Ins., 718.

APPEAL from Washington.   Tried below before the Hon. I. B. McFarland.

A statement of the case is given in the opinion.

*Giddings & Morris* and *Breedlove & Ewing*, for appellant.

*Sayles & Bassett*, for appellee.

QUINAN, J.— The plaintiff below, who is appellee here, brought this suit to recover of the appellant $5,000, amount of a policy of insurance against fire, executed by the defendant, covering a certain stock of goods, belonging to the plaintiff, and stored in their certain buildings, described in the policy.

The policy was issued December 8, 1871, and, by its terms, continued in force for one year. It was renewed for another year, December 8, 1872.

On the 27th September, 1873, the insured property was destroyed by fire, and on the 31st August, 1874, suit was instituted to recover the amount alleged to be due on the policy, and at the June term, 1875, judgment was rendered against the company, from which defendant appealed. Its defense was that the plaintiff had avoided the policy, and forfeited the insurance:

1st. By falsely representing in the original application that there was a street on the south side of the building.

2d. By falsely representing that he was the only party interested in the insured property.

3d. That after the last renewal and during its continuance, the plaintiff annulled the policy by permitting the buildings to be occupied by D. A. Allen as a postoffice, whereby the risk was increased.

4th. By permitting a ten-pin alley to be erected on an adjoining lot, whereby the risk to the insured property was increased.

5th. By his failure to make out and deliver to defendant such particular account of the loss and damage as the nature of the case admitted.

6th. That the plaintiff made false statements in his preliminary proofs, which debarred him of a recovery on the policy.

There were some other defenses set up in the answers, but they were waived or withdrawn on the trial.

The assignments of error are numerous, pointing out errors in the charge of the judge, and objecting to the verdict of the jury as against the evidence and the law.

We will notice the points made in the order in which the defendant has presented them in its defense as stated.

1. The points relating to misrepresentation in Dwyer's original application for insurance may be answered by stating that the original application for insurance, made by Dwyer and Healey, forms no part of this policy and is not referred to in it. Where there are no words of reference to the application in the policy they form no part thereof. If the insurer desires to make them so he must refer to them, and cannot claim that by implication they are to be treated as a part thereof. 7 Lans. (N. Y.), 452.

2. As to the representation of ownership in the goods insured. The condition indorsed on the back of the policy is, "Property held in trust or on commission must be insured as such, otherwise this policy will not cover such property, and in case of loss the names of the respective owners shall be set forth in the preliminary proofs of such loss, together with their respective interests therein." The goods were insured as the property of Dwyer. The facts were that when the policy was issued, in December, 1871, Dwyer was a married man, and was then engaged in a large mercantile business. His wife died in September, 1872, so that when the policy was renewed in December, 1872, the goods insured were held by him in common with the three children of his wife, not " in trust or on commission," technically, but with the right and power actually being exercised by him to sell and deal with them, and dispose of them in settlement of community debts if such there were. Jones v. Jones, 15 Tex., 148; Flanders on Insurance, 281, and the cases cited in note 1.

The whole stock was valued at $75,000, so that Dwyer had an individual separate insurable interest in the goods largely in excess of the amount insured. There was no

written application, on the part of Dwyer, made for this insurance, no questions were asked him, and no representations were made by him. The agent of the company made out the policy and delivered it to him, and the facts of Mrs. Dwyer's recent death and the condition of the property and its true ownership were well known to the company's agent. "He was familiar with Dwyer's family and could not have been ignorant of the facts." In this state of case we are of opinion that this defense is not available to the defendant, and that Dwyer was not precluded from a recovery on account of this statement of the ownership of the property. If the statement were to be considered even a false representation or warranty, "the tendency of the later and better cases," it is said, "is that when the insurer knows the falsity of the warranty when the contract is made, he cannot avail himself thereof as a defense to an action upon the policy; and it seems to be now very well settled that an untrue or fraudulent statement on the part of the applicant of a fact material to the risk does not avoid the policy when either the company or its agent was informed of and knew the real facts at the time when the contract was made, or the premium paid. And especially is this the case when the agent fills up the application, and, knowing the real facts, misstates them, through mistake or otherwise." Wood on Fire Insurance, 277, and cases cited.

The rule is that when the agent knows the facts and that there is no intention on the part of the insured to deceive or defraud the insurer, the misstatement of facts by the agent will not avoid the policy. And there is no pretense that there was any improper or sinister motive inducing Dwyer to conceal any fact in relation to the ownership of that property, or that anything was concealed or misrepresented. Wood on Ins., 414.

And again it has been held, "if the assured has really such an interest or property in the subject-matter of the risk, that calling it 'his own' or 'his' or 'my,' etc., can in any sense be construed as consistent with the truth, the policy will be upheld although the absolute title did not

vest in the assured. The test is whether the assured had an insurable interest, and stood in such a relation to the property that it could be in any light regarded as his." Wood on Ins., 297, and cases cited in note. And we have little doubt that that applies to Dwyer's title to the property. He had possession, with the right of disposition of it, for the payment of his own debts and in the settlement of his business, and unquestionably had an insurable interest in it. As said by Chief Justice Hemphill, in Jones v. Jones, "as survivor he had competent authority to discharge the debts of the partnership, and whether the discharge of the debts, or any act which he might lawfully do as survivor, be done in his own name simply or in his name as survivor, is immaterial." Conta v. Connor, at the present term, S. C.

The third ground of defense is that the plaintiff annulled the policy by permitting the buildings to be occupied as a postoffice.

To this we need make no other reply than that the proof is unquestionable (whether it be admitted that the keeping the postoffice in the building increased the risk or not) that Dwyer took the precaution to obtain the permission of the companies in which he was insured for that purpose. He says: "M'Koenig, as agent of the defendant, gave me a written permit." And the company had the power through its agent to waive this increased risk, if such it were. Flanders on Ins., 324.

The fourth proposition insisted upon by the defendant, and very strenuously urged, is that by permitting a ten-pin alley to be erected on an adjoining lot, whereby the risk to the insurer was increased, the policy was forfeited.

The condition indorsed on the policy is: "If after insurance effected either by original policy or a renewal thereof, the risk shall be increased by any means whatever within the control of the insured, . . . such insurance shall be void and of no effect." By this is meant, of course, a material, substantial increase of risk.

The proof with respect to the erection of the ten-pin alley shows that in the spring of 1873 Dwyer leased to O'Meally

a piece of ground adjoining the rear part of his building, for the purpose of erecting a ten-pin alley thereon, and that the alley was erected so that the rear part of it was within eighteen to twenty inches of the rear part of the store house. It was a wooden frame building ninety feet long, and extended along the rear and south side of the Dwyer building eighteen or twenty feet. A diagram of the buildings and their connection with the Dwyer store was in evidence before the jury.

The defendant offered testimony to show that the erection of this ten-pin alley greatly increased the risk and danger to the insured property.

Burke, an insurance agent, said that the risk would be increased one-half to one per cent.

M'Donald testified that it very materially increased the risk of fire, and that the insurance companies doubled their rates in that locality.

Breedlove, an insurance agent, familiar with insurance business, swears that the ten-pin alley would materially increase the risk and the rate of insurance.

To the same effect is the testimony of Sampson, the secretary of the company, and others.

And Fisher testified that a ten-pin alley properly kept would not be more dangerous than a mercantile establishment.

Now, whether the erection of the ten-pin alley, admitting it to have been within the power of Dwyer to prevent it, was an increase of the risk within the meaning of the policy, it is well settled is a question for the jury, and their finding is conclusive thereon. It is not a question of science — it is to be determined as a fact. It is a subject of common observation, upon which the uneducated mind is capable of forming a judgment. And so it is said, in such matters, experts are not permitted to state their conclusions, and the jury are at liberty to disregard their testimony. It has been held that the opinion of underwriters, or the materiality of facts and the effect they would have had upon the premium, is not admissible in evidence. 94 U. S., 475. "It is for the

jury to say whether, in view of all the circumstances, a reasonably prudent man would have been influenced in taking or declining the risk, or would have charged a higher rate of premium therefor. And in determining this question, they are to say whether, in view of the evidence, the liability of the property to destruction from the peril insured against was essentially increased." Wood on Ins., 443, 444.

In Lyman v. The State Mutual Ins. Co., 14 Allen (Mass.), 329, where the policy contained a condition that where the risk should be increased by the act of the insured, the policy should be void, and the contention was whether the risk had been increased by extensive alterations and repairs to the building made by the insured, and experts were examined to that point, the court say: "The only remaining question is whether the opinions of witnesses, which were admitted to prove an increase of risk, were competent evidence, and upon consideration we are unanimously of opinion that they were not. The decision of this point, as presented, requires no extended examination of authorities, for it is quite clear that no witness can be permitted to testify to his own individual opinion, merely upon the issue whether the risk was increased, when that depends upon facts which involve no peculiar science or information, but are within the common knowledge of man."

And so in Grant v. The Howard Ins. Co., 5 Hill, 16, it was held that it was not for the court to determine whether the risk had been increased, but that the question belonged to the jury. See, also, Stebbins v. The Globe Ins. Co., 2 Hall, 632; New Eng. F. & M. Ins. Co. v. Wetmore, 32 Ill. 245.

And now as this question, whether the erection of the ten-pin alley increased the risk, was one solely for the jury, that it belonged to them to draw the conclusion, risk or no increase of risk, from the facts in evidence before them, and not from the opinions of others; and as under the authorities, the testimony by witnesses who gave their opinion upon the subject was entitled to no controlling consideration, the verdict of the jury against the alleged increase of risk would be

held conclusive and ought not to be disturbed by us, however widely we may differ from them in their judgment, unless it can be shown that their verdict might have been the result of other considerations, independent of the mere question of actual increased risk.   And this brings us to consider in this connection the charge of the court which is complained of upon the subject of waiver.

The court charged the jury that "if the defendant by its agents, acting within the scope of their authority, had actual knowledge, notice or reasonable information of the plaintiff having permitted . . . the erection of the ten-pin alley in proximity to the store, and if with such knowledge and information *they made no objection thereto,* but continued knowingly to earn and retain the premiums, as if the policy were still in full force, or if by the conduct of its agents, acting within the scope of their authority, the defendant induced the plaintiff to believe that the said erection of the ten-pin alley did not in their view materially increase the risk or avoid the policy, then the defendant would be estopped and precluded from setting up the avoidance of the policy by reason thereof."

Nor we cannot say that the jury were not influenced in their finding by this instruction, and it is very obvious that it is erroneous, and for these reasons:

I. There was no allegation in the petition or pleas of plaintiff of any waiver of the forfeiture of policy which might result from the increased risk caused by the erection of the ten-pin alley.   In Texas B. & Ins. Co. v. Hutchins, 53 Tex., 61, the court say, a waiver, when relied on, must be set up; that it must amount either to an agreement or an estoppel, and that in the latter case the particular acts, representations or conduct that have been relied on and acted on shall be "stated with reasonable certainty."   Banking Co. v. Stone, 49 Tex., 13, and cases cited, p. 16; Insurance Co. v. Lacroix, 45 Tex., 170.

II. There was not the slightest testimony to warrant the giving of it.   There is no proof in the record of any act of

any sort done or permitted to be done by the company or its agents to alter Dwyer's position or induce him to believe that the erection of the ten-pin alley was not considered an increase of the risk, and an avoidance of the policy.

III. The contract between Dwyer and the insurance company (a contract which they had the right to make) was, "that if the risk is increased the policy is void." This charge in effect adds to that contract a proviso, "if the company make objection."

IV. The fact of the increased risk rendered the policy *ipso facto* void. By its terms nothing was required to be said or done by the company to make it so. They were under no obligation to give notice to the insured or return any part of the premium. The clause in the policy which permits its annulment upon return of the premium unearned, and notice given, is an independent section, and has no connection with the provision upon the subject of increased risk. Boatright *v.* Ætna Ins. Co., 1 Strobhart (S. C.), 281; 99 Mass., 160. By Dwyer's act, admitting the erection of the ten-pin alley to have been a substantial increase of the risk, he declared the policy to be void, and there was no legal or moral obligation on the company to convey that information to him. The knowledge they had was only the knowledge that their liability was at an end, and that Dwyer had terminated it.

These propositions seem to us to be consonant to reason and are abundantly supported by authority. See N. Y. Central Ins. Co. *v.* Watson, 23 Mich., 486; Hoyet *v.* Gilman, 8 Mass., 339; Hendricks *v.* Commercial Ins. Co., 8 Johns., 1; Waters *v.* Allen, 5 Hill, 424.

It is not doubted but that the insurance company might have waived the forfeiture of the policy on account of the increased risk; but that waiver must be established by proof of some act on their part, done with full knowledge of, and inconsistent with, the idea of insisting upon the forfeiture. So it is said, " whenever the insurer, with knowledge of any act of the assured that works a forfeiture, does any act

that shows he recognizes his liability under the policy as an outstanding obligation, as when he accepts a premium for a renewal of the policy or for any increase of risk, the forfeiture is waived and the policy remains operative." Wood on Ins., 176; 4 Bennett's Ins. Cases, 790.

But we have been referred to no case, and we think none can be found, where mere silence or non-action on the part of the company, or failure to make objection where the policy, by its terms, imposes no obligation upon them to make objection or give notice, has been held to have the effect of renewing an insurance which had been forfeited, or imposing upon them an obligation against which they have protected themselves by the terms of their contract. They have the right to insist upon its enforcement; and if this should be deemed to operate oppressively upon the assured, the remedy is to make more liberal bargains or assure with those who can extend more liberal terms.

The remaining grounds of defense, which relate to the proofs of loss, have not been insisted upon in the argument, and may be briefly disposed of.

As far as relates to the proof of ownership, we have already considered that. The proofs may not have been formally made out, but they were received without objection, and we think that objection on that account was waived. Flanders on Ins., 566.

There was no fraudulent misstatement or concealment, and so we assume the jury to have found.

Where defective proofs have been made, a refusal to pay on special grounds, or a denial of liability, unless specially predicated upon the defects in the preliminary proofs, is a waiver of all defects therein, and estops the insurer from insisting upon them to defeat his liability. So where no objection is made to the proofs, or if the insurer's examiner makes an examination of the loss and denies all liability under the policy, in these and the like cases, the insurer is treated as waiving all defects in the preliminary proofs. Wood on Ins., 718, and the numerous cases cited.

For the error indicated in the charge of the judge, we are of opinion that the judgment should be reversed and the cause remanded, and we so award.

REVERSED AND REMANDED.