No. 6209.

## C. M. MANN ET AL. *v.* E. Y. BROWN.

1. USURY.—The payment of usurious interest is a valid consideration for an extension of time made upon such payment, upon a promissory note.

2. EXTENSION OF TIME BY PRINCIPAL.—Our courts have frequently held that a valid agreement changing the terms of an obligation, as by extending the time of payment, without the consent of the sureties, will operate as a discharge of their liability.

APPEAL from Coleman. Tried below before Hon. T. B. Wheeler.

The opinion states the case.

*Martin & Vining,* for appellants: The court erred in giving judgment in this suit in this, that the evidence shows that the sureties, Mann, Jackson and Dunman, were released and discharged from all liability by the extension of time given without their consent and because of the making by Brown with Fountain a new and different contract.

The making of a new and different contract by the principal obligor and obligee without consent or concurrence of the sureties, whereby the time of payment is extended or pecuniary obligation or risk is increased, operates a discharge of such sureties.

The original contract was a promissory note dated July 1, 1882, payable to plaintiff twelve months after date, with inter-

est at the rate of twelve per cent per annum, being the obligation which the maker and sureties bound and obligated themselves to pay. The agreement entered into by and between C. C. Fountain, principal, and plaintiff Brown, extended the time of payment of said note for one year after its maturity without the knowledge or consent of said sureties. The sureties were not parties to said new contract.

Plaintiff testified that: "I did not see any of the parties at the first extension of time of payment except Fountain. I do not know whether they knew anything about it or not. I did not tell them or notify them."

Defendant Fountain testified as follows: "I signed the note sued on as principal, the defendants, Mann, Jackson and Dunman signed it as sureties for me. Plaintiff Brown knew in what capacity they signed it. Some time in the latter part of May or first of June, 1883, I wrote to Mr. Brown, plaintiff, asking him if he could extend the time of payment of the note and Brown answered my letter, in which he stated that if I would pay him the three per cent additional interest and the twelve per cent interest then due that he would extend the time for one year from the first day of July, 1883, if agreeable to all parties." I saw Mr. Brown in person some time in the latter part of June, 1883, in the town of Coleman, and he agreed at that time, verbally, if I would pay the three per cent additional interest and the twelve per cent interest then due, as was shown by the note, he would extend the time of payment. I paid him ninety-three dollars, that being the three per cent additional interest and three hundred and seventy-two dollars, that being the interest then due. I believe I paid him on or about the twenty-fourth day of June, 1883, at which time Brown again agreed to extend the time of payment until the first day of July, 1884. The sureties never at any time, so far as I know, knew anything about my making the payment nor my getting an extension of time, and it was done without their knowledge or consent. Some time in July, 1884, I again wrote to Brown, asking for a second extension of time. In answer to my letter he said if I would pay him one thousand one hundred dollars and three per cent additional interest and the interest then due, as shown on the face of the note, he would extend the time of payment again. I saw Mr. Brown in Coleman a short time after writing to him and I paid him sixty dollars, it being the additional interest of three per cent and three hundred and

seventy-two dollars as interest then due. I paid him also one thousand one hundred dollars, which was credited upon the note. It was also done without the knowledge or consent of the sureties as far as I know. Mr. Brown at no time ever talked to any of the sureties in my presence about giving the extension of time. I was perfectly solvent on July, 1883, and would have paid off the note at maturity if Mr. Brown had not extended the time of payment. I was also solvent in July, 1884, and could and would have paid the note if I had not gotten an extension of time. I became insolvent during the winter of 1884 and 1885. It was January, 1885, when I became utterly insolvent.

R. L. Dunman, one of the defendants, testified as follows: "I signed the note as surety at the request of C. C. Fountain. I knew nothing of the extension of the time of payment, nor did I agree to said extension."

J. J. Jackson, one of the defendants, testified as follows: "I signed it as surety for Fountain at his request. I never knew anything about either of the extensions of the time of the payment of the note." (Burke v. Cruger, 8 Texas, 70; Cruger v. Burke, 11 Texas, 694; Knapp v. Mills, 20 Texas, 123; Wybrants v. Lutch, 24 Texas, 309; Pilgrim v. Dykes, 24 Texas, 384; Claiborne v. Birge, 42 Texas, 98; Yeary v. Smith, 45 Texas, 57; Bogarth v. Breedlove, 39 Texas, 561; Bailey v. Adams, 10 New Hampshire, 162; Grafton Bank v. Woodward, 10 New Hampshire, 105; New Hampshire Saving Bank v. Ella, 11 New Hampshire, 335; Young v. Berkley, 2 New Hampshire, 200; Rees v. Barrington, 2 Vesey, Jr., 540; Samuel v. Howarth, 3 Mer., 278; Eyre v. Barthrop, 3 May, 126; Chitty on Bills, 4, 3; Oakie v. Spencer, 2 Wharton, 253; Leading Cases on Bills and Notes, 547, also note 546; McLettson v. Powell et al., 12 Wheaton, 554; Bank of United States v. Hatch, 6 Peters, 250.)

*H. C. Randolph*, for appellee: The court did not err for the reason that the defendant Fountain's testimony was not offered and admitted for the purpose of varying the terms of the written contract, as plaintiff was not seeking to collect fifteen per cent, but for the purpose of proving that at the time the loan was made to Fountain, for which the note was given, it was the express agreement and understanding by and between plaintiff and defendant Fountain, that said Fountain was to pay plaintiff fifteen per cent for the use of the money,

three per cent of which was to be paid in advance, and for the further purpose of rebutting the allegations in the defendant's answer that defendant Fountain had paid ninety-three dollars as a new consideration, and obtained from plaintiff an extension of time for the payment of the note, and for the further purpose of showing that plaintiff refused to accept a new consideration without the consent of all parties to the note.

The court did not err in giving judgment for plaintiff, for the reason that there was no new or different contract entered into between plaintiff and defendant Fountain without the knowledge and consent of defendants.

WALKER, ASSOCIATE JUSTICE. August 2, 1886, Brown the appellee, sued C. C. Fountain, C. M. Mann, J. J. Jackson and R. L. Dunman on a promissory note of date July 1, 1882, for three thousand one hundred dollars, and due twelve months thereafter bearing twelve per cent interest from date. Credits allowed in the petition were, June 18, 1883, three hundred and seventy-two dollars, and July 1, 1884, fourteen hundred and seventy-two dollars.

Defendants Mann, Jackson and Dunman pleaded that they were sureties, and further, that by parol contract between Brown and Fountain, made June, 1883, and in consideration of the payment of interest due for the first year, and the further sum of ninety-three dollars, being three per cent interest additional and for the next year, Brown had extended the payment of the note for one year from its maturity without the knowledge or consent of the sureties; and a like extension July 1, 1884, on payment of interest due and eleven hundred dollars on the principal, and sixty dollars, being three per cent interest in advance additional to the stipulated interest. The answer was not sworn to, nor was usury pleaded.

The defendant, Fountain, testified that he was principal on the note; that Brown knew that Mann, Jackson and Dunman were sureties. That in the latter part of June, 1883, in the town of Coleman, he saw Brown, and he agreed at that time verbally to extend the time of payment "if I would pay the three per cent additional interest and the twelve per cent interest then due as was shown by the note, and I paid him ninety-three dollars, that being the three per cent additional interest, and three hundred and seventy-two dollars, that being the interest then due on the note. I believe I paid the

money on or about June 24, 1883, at which time Brown again agreed to extend the time of payment until July 1, 1884." The sureties knew nothing of this payment or the extension.

The Revised Statutes, articles 2978 and 2979, substantially re-enacting sections 3 and 4 of an act to regulate interest, of January 18, 1840, provides:

"Article 2978. The parties to any written contract may agree to and stipulate for any rate of interest not exceeding twelve per cent per annum on the amount or value of the contract.

"Article 2979. All written contracts whatsoever which may, in any way, directly or indirectly, violate the preceding article by stipulating for a greater rate of interest than twelve per cent per annum shall be void and of no effect for the whole rate of interest only; but the principal sum of money, or the value of the contract, may be received and recovered."

Article 2981 further provides that "No evidence of usurious interest shall be received on the trial of any case unless the same be specially pleaded and verified by the affidavit of the party wishing to avail himself of such defense."

Our courts, therefore, can not pass upon facts making a contract usurious in absence of the special plea verified by affidavit and interposed by the party wishing to avail himself of such defense.

In 14 Texas, 601, Payne v. Powell, it is held that an obligation made to the payee for the payment of usurious interest, not being itself valid, was not a sufficient consideration for an agreement to extend the time of payment of a promissory note so as to discharge the sureties, such agreement to extend being held invalid for want of consideration.

It is evident that the reason given by Justice Wheeler for the invalidity of the agreement for the extension of the time of payment would be obviated by the payment of such consideration in money.

In 1 B. Monroe, 326, Kenningham v. Bedford, Chief Justice Robertson discussing like facts, holds: "The payment even of legal interest in advance would have been a valuable and valid consideration for forbearance; and so far as the validity of the contract as to the creditor was concerned, the usury did not either affect the payment of the legal interest in advance on the principal obligor's right (as against all the parties) to the indulgence for which he had paid a valuable consideration,

which he had a perfect right, both legal and moral, to pay. His right to the indulgence can not be affected by the fact that either himself or his sureties might have elected to revoke the usury and make a different application of it." (See also 7 B. Mon., 218; Brandt on Suretyship, secs. 309, 310.) It has been held otherwise where by statute "all contracts infected with usury" are declared void. In our statute the contracts are, as before stated, void only as to interest, and at instance of the defendant. (Brandt on Suretyship, sec. 310 and cases.)

The testimony of Fountain is that the extension was agreed upon on or about June 18, 1883, between him and the payee of the note, Brown, for one year from maturity of it; that the contract was made and the money paid (ninety-three dollars for interest for the next year in advance in excess of twelve per cent, and the further payment of the full amount of the interest for the year ending July 1, 1883), the payment being made on June 24, before it was due; and that the extension was without the knowledge or consent of his sureties.

Our courts have frequently held that a valid agreement changing the terms of an obligation, as by extending the time of payment without the consent of the sureties, will operate as a discharge from their liability.

The judgment should have been for appellants. The judgment below is reversed and cause remanded.

*Reversed and remanded.*

Opinion delivered June 19, 1888.