further information before acting.　While it is the rule that a person desiring to repudiate a transaction entered into by mistake should act promptly after discovering the mistake, he should also be required to show reasonable diligence in ascertaining the facts.　Here there has been no endeavor upon the part of the defendant to withhold any of the facts.　It placed upon the policy a statement which, to say the least of it, is not only notice, but an invitation to further inquiry.　Yet the plaintiff, according to his own account, made no further attempt to investigate the matter until the fall of 1895, and did not commence his action until 1896, nearly six years after he received the money upon the last policy, after the money so received had been distributed among his father's creditors, and after his accounts as executor had been passed upon by the surrogate.　This delay, while perhaps not an absolute bar to the plaintiff's claim, is yet a matter that the court cannot help considering in passing upon the merits of this action.

For these reasons, the order denying the motion for a new trial should be reversed, and a new trial granted, costs to abide the event. All concur.

---

(24 App. Div. 547.)

### CRANDALL v. MOSTEN et al.

(Supreme Court, Appellate Division, Third Department.　January 5, 1898.)

1. SURETIES.

Sureties on the bond of a town collector are sureties on the note which he and they execute to the town treasurer in consideration of his advancing to the town the amount of taxes uncollected when the collector is called on to settle, and giving him time to collect such taxes and repay him.

2. SAME—WAIVING DEFENSE.

One does not waive the defense that he is a surety, and as such discharged by the neglect of the payee, by merely writing the payee that he is going to try to have the note settled, and asking whether, in case he had to pay it all himself, he could pay it in installments; the payee not having, by reason thereof, done or omitted to do anything to his prejudice.

Landon, J., dissenting.

Appeal from special term.

Action by Emerson S. Crandall against Philip Mosten, impleaded with others.　From a judgment for plaintiff, defendant Mosten appeals.　Reversed.

This action is upon a promissory note signed by Robert and James Whitaker and by the defendant Philip Mosten, dated November 17, 1885, payable two months after date, with interest.　The defendant Mosten set up two defenses: First, that the action was barred by the statute of limitations; and, secondly, that he had signed such note as a surety, and that he was discharged from liability because of the neglect of the plaintiff to prosecute it when requested to do so.　To these defenses the plaintiff now replies that both had been waived by written acknowledgment contained in a letter, of which the following is a copy:

"Weavertown, N. Y., Feb. 13, 1892.

"E. S. Crandall—Dear Sir: Yours at hand.　I am going to try to have the note settled in some way in a short time.　Mr. Whitaker has offered his garnet at a reduced price if they will let him have money to pay the note you hold; but I

have little hopes from that company. James Whitaker's son is in the woods to work. When he comes home I will see all of them, and see what can be done. I am anxious to have it settled, as it is growing more every year. If I have to pay it myself, will you accept of it in installment, as I cannot very well spare so much out of my business in one payment.

"Yours, truly,          P. Mosten."

Upon the trial, judgment was rendered for the plaintiff, and from such judgment the defendant brings this appeal.

Argued before PARKER, P. J., and LANDON, HERRICK, MERWIN, and PUTNAM, JJ.

Porter & Kellogg, for appellant.
King & Angell, for respondent.

PARKER, P. J. Without discussing the question whether the letter of Mosten operated to revive, as against him, the cause of action upon the note, there is another question presented by this record, the decision of which must result in a reversal of this judgment. Upon the trial the defendant Mosten claimed that he was a surety with James Whitaker for the principal debtor, Robert Whitaker, and offered to show that in the early part of 1890 he asked the plaintiff to prosecute the note to judgment while it was collectible, and reminded him that it would soon outlaw; that at that time the principal, Robert Whitaker, was pecuniarily responsible, and the note could have been collected from him; that the plaintiff did not sue the note until the present action was brought, in December, 1896, and that in the meantime Robert Whitaker became insolvent, and the note outlawed as to his co-surety, James Whitaker. The trial court excluded all this evidence, holding that neither the defendant Mosten nor James Whitaker were sureties, and therefore refused to allow such defense to be considered in the case. It is clear that Robert Whitaker was the principal debtor, and that James and the defendant Mosten were his sureties. The evidence of the plaintiff himself shows such to be the case. Robert was collector of the town. The others were his sureties on his bond to the town as such officer. Plaintiff was treasurer of the county, and when Robert was called upon to settle as such collector it appeared that there was about $600 of taxes upon the roll not yet collected by him. Plaintiff thereupon agreed with him that he would advance to the town the amount so uncollected, and that Robert could have two months longer to collect and repay him therefor; and the note in suit was given in consideration thereof, James Whitaker and defendant Mosten signing to secure the debt so contracted. Surely, as between Robert and the others, the debt was Robert's. He was primarily liable upon the bond, and the money advanced by plaintiff was advanced at Robert's request, and for his benefit. As the plaintiff testified, it was, in legal effect, "cash advanced to Robert," and the liability which it discharged was primarily his. If a note is signed by A. as principal and B. as surety, the giving of a renewal note by them does not change their relation. So, in this case, Robert was at all times primarily liable, and the other two incurred liability solely for his benefit; and, if either had paid the note in question, beyond all doubt he would have had a cause of action against Robert to recover the amount

so paid.  Such being the relation of the parties, the facts which the defendant Mosten offered to show constituted a clear defense to the plaintiff's claim.  King v. Baldwin, 17 Johns. 384; Colgrove v. Tallman, 67 N. Y. 95; Toles v. Adee, 84 N. Y. 239.  This is not like the case of Newcomb v. Hale, 90 N. Y. 327, where the defendant became a surety upon a new consideration moving directly to himself.  The distinction between the cases is there pointed out by Andrews, C. J., on pages 331 and 332 of the case.  See, also, Wells v. Mann, 45 N. Y. 330.  An effort is now made to relieve the case from the result of that error by the claim that the letter above referred to waived such defense.  A waiver, as a general rule, to be binding, must operate by way of estoppel, or amount to a promise supported by a valuable consideration.  Ripley v. Insurance Co., 30 N. Y. 136–164.  Subsequent decisions have established the rule that forfeitures in an insurance policy are waived "when the company, with knowledge of all the facts, requires the assured, by virtue of the contract, to do some act or incur some expense or trouble inconsistent with the claim that the contract had become inoperative in consequence of a breach of some of its conditions."  Trippe v. Society, 140 N. Y. 28, 35 N. E. 316.  This line of cases could probably be sustained upon the theory that in each case the elements of an "estoppel in pais" existed; but, even if it be otherwise as to some of them, they could hardly be deemed authority to overturn the general rule.  Forfeitures are not favored in the law, and it is said in People v. Manhattan Co., 9 Wend. 381, in reference to waiver of forfeitures in a lease, "It is a technical doctrine, introduced and applied by the courts for the purpose of defeating forfeitures."  Applying to this letter the general rule controlling waivers, it is clear that it could not operate as such under the evidence in this case.  There are no elements of an "estoppel in pais" shown to exist.  It does not appear that by reason of the letter plaintiff has done any act, or omitted to do any, that has in any way operated to his prejudice.  Nor is there any promise contained in it to pay the debt.  Certainly, there is no express promise in it, and a mere acknowledgment is not sufficient.  In this respect it differs from the rule relating to the statute of limitations, above referred to.  It is analogous to the case of a new promise operating to revive a debt discharged by bankruptcy.  The old indebtedness may constitute the consideration for the new promise (Dusenbury v. Hoyt, 53 N. Y. 521), but the promise itself must be clear and unequivocal (Allen v. Ferguson, 18 Wall. 1; Depuy v. Swart, 3 Wend. 135–139; Sands v. Gelston, 15 Johns. 511–519; Lawrence v. Harrington, 122 N. Y. 408, 25 N. E. 406).  In the latter case, Judge Brown, at page 413, 122 N. Y., and at page 408, 25 N. E., says: "All the authorities agree that a promise by which a discharged debt is revived must be express and distinct.  It cannot be implied or inferred."  At the time this letter was written, the defendant Mosten, if the facts which he offered to prove existed, had a complete defense as against the note.  Being a surety, he had been discharged from his liability thereon by the plaintiff's neglect.  Nothing expressed in that letter has operated to estop him from now availing himself of that defense, and no new promise is therein contained by which a new indebtedness has been created.  Moreover, it is to be noted that it does not appear that

Mosten at that time had knowledge of all the facts which operated to discharge him as surety. He may not have known that Robert had become insolvent, or that the note had in fact outlawed as to James. A waiver can only be made upon full knowledge of all the facts. It was error, therefore, to exclude such defense upon the trial of this action. These considerations lead to the conclusion that the judgment must be reversed.

Judgment reversed, and new trial granted; costs to abide the event. All concur, except LANDON, J., dissenting.