FIRST NAT. BANK OF RUSK v. RUSK PURE ICE CO. et al.

(Court of Civil Appeals of Texas.  March 30, 1911.)

1. EVIDENCE (§ 423*)—PAROL EVIDENCE—LIABILITY ON NOTE—PRINCIPAL OR SURETY.

Though all of the signers of a note appear on its face to be principals, it may be shown as between the payee and the signers that one of them signed as surety.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1962; Dec. Dig. § 423.*]

2. BILLS AND NOTES (§ 121*)—LIABILITY OF SIGNER—NATURE OF RELATION—SURETY.

As between the makers of a note, the question of which of them is principal and which surety is determined by ascertaining who received the consideration.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 255, 256; Dec. Dig. § 121.*]

3. BILLS AND NOTES (§ 121*)—LIABILITY OF SIGNER—NATURE OF RELATION.

The signer of a note can claim the rights of a surety as against the payee, if the payee knew when the note was executed and the loan made that such signer was an accommodation signer.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 255, 256; Dec. Dig. § 121.*]

4. BILLS AND NOTES (§ 122*)—LIABILITY OF SIGNERS—CAPACITY OF PARTIES—EXPRESS CONTRACT.

If the makers of a note agree, when the loan is made, that all are made primarily liable, the payee may hold all parties as principals, though some of them were accommodation signers.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 259; Dec. Dig. § 122.*]

5. BILLS AND NOTES (§ 121*)—LIABILITY OF SIGNERS—NATURE OF RELATION.

If a note executed by a corporation and others was not ultra vires as to the company, that the others were stockholders would not prevent them from claiming the rights of sureties.

[Ed. Note.—For other cases, see Bills and Notes, Dec. Dig. § 121.*]

6. PRINCIPAL AND SURETY (§ 162*) — DISCHARGE OF SURETY—DIRECTION OF VERDICT.

To justify a peremptory instruction that the sureties on the note sued on were discharged by an extension of time, the evidence must have conclusively established an agreement to extend the time.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 443; Dec. Dig. § 162.*]

7. PRINCIPAL AND SURETY (§ 104*) — DISCHARGE OF SURETY—EXTENSION OF TIME OF PAYMENT.

A valid agreement by the payee without the surety's consent to extend the time of payment of a note discharges the surety.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 186; Dec. Dig. § 104.*]

8. PRINCIPAL AND SURETY (§ 125*)—RIGHTS OF SURETY.

As a rule, the payee need not exercise active diligence to preserve his rights against surety on a note.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 312; Dec. Dig. § 125.*]

9. PRINCIPAL AND SURETY (§ 162*) — DISCHARGE OF SURETY—EXTENSION OF TIME—EVIDENCE.

Evidence, in an action on a promissory note, held to make it a jury question whether the payee agreed to extend the time of payment without the sureties' consent, so as to discharge the latter.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 443; Dec. Dig. § 162.*]

10. PRINCIPAL AND SURETY (§ 105*) — DISCHARGE OF SURETY—EXTENSION OF SECURITY.

If the payee of the note sued on did not, upon the subsequent sale of the maker's business, accept a mortgage securing another debt as security for the note sued on, but merely as indemnity for the sureties on such note, an agreement extending the mortgage would not prevent the payee from bringing suit on the note, if demanded by the sureties, so that they would not be discharged by such an extension.

[Ed. Note.—For other cases, see Principal and Surety, Dec. Dig. § 105.*]

11. PRINCIPAL AND SURETY (§ 102*) — DISCHARGE OF SURETY—NEW OBLIGATIONS.

If the payee of a note did not accept the obligation of the purchaser of the maker's business as payment of the note, the liability of the sureties thereon was not extinguished by any new obligation created by reason of the sale of the business.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 181–185; Dec. Dig. § 102.*]

Appeal from District Court, Cherokee County; James I. Perkins, Judge.

Action by the First National Bank of Rusk against the Rusk Pure Ice Company and others. From a judgment for the unnamed defendants, plaintiff appeals. Reversed and remanded for new trial.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

M. J. Whitman and B. B. Perkins, for appellant. Norman & Shook, Donley & Guinn, and C. B. Emanuel, for appellees.

LEVY, J. On March 12, 1907, the Rusk Pure Ice Company, a corporation, and the three coappellees executed a promissory note for $575 payable to appellant bank. The suit was brought by the bank against the appellees on this note. The petition made H. H. Powers and W. P. Reed defendants upon the allegation that they were claiming to own all the assets of the ice company by reason of a transfer from the officers of the company, but appellant dismissed as to them. It was the contention of the appellees Wiggins, Summers, and Guinn that they executed the contract as sureties as an act of accommodation, and not as principals, and that the payee of the note, without their knowledge or agreement, had given a valid and binding extension of time of payment to the principal, by which they as sureties were discharged of their undertaking. In a trial to a jury, the verdict, under peremptory instruction, was against the ice company for the amount of the note, interest, and attorney's fees, and in favor of appellees. The appeal, under proper assignments of error, is to revise the ruling as to an instructed verdict in favor of appellees. The principal inquiry is as to whether the evidence so established as to not make an issuable fact for the jury that the appellees executed the contract as sureties; and, if so, whether the payee in the note had given an extension of time to the principal, as to operate the discharge of the sureties from their undertaking. The note was in the form of a joint obligation, and the face of the note does not disclose any relationship of surety.

[1] Although upon the face of the note they all appear to be principals, it is permissible, as between the payee and the makers, to prove, under proper allegations, that one of the makers signed the note in fact as surety, and to make such defenses as are admissible to suretyship. 1 Brandt on Suretyship, § 58; Smith v. Doak, 3 Tex. 215; Burke v. Cruger, 8 Tex. 67, 59 Am. Dec. 102.

[2] As between the makers or signers of the note themselves, the question of who is principal, and who surety, is determined by the inquiry as to who received the consideration for which the obligation was executed. Leschen v. Guy, 149 Ind. 17, 48 N. E. 344; Tanner v. Gude, 100 Ga. 157, 27 S. E. 938.

[3] And if the payee in the note at the time of the contract knew that some of the signers had no interest in the loan and merely became a party to the note for the accommodation of the other, and with such knowledge the payee made the loan, then such signer can set up claims against the payee depending on the relation of surety. 1 Brandt on Suretyship, § 42; Burke v. Cruger, supra.

[4] But if in the contract to lend the money to one of the parties there is an agreement at the time between the payee and all the parties that all are to be primarily liable for the debt and for the payment of the note, and the money is loaned on such agreement, then the payee has the right to look to all the parties for the payment, as principal. In the case of Roberts v. Bane, 32 Tex. 386, there was nothing in the transaction showing that Roberts could even suppose that Bane was surety, and besides he had held himself forth as a principal.

[5] As it is positively shown that the contract was not ultra vires as to the ice company, the fact that the appellees were stockholders in the company would not prevent the defense of suretyship. So, under these principles and the facts in the present record, to which we are speaking, it could not properly be said, as a matter of law, that the appellees were principals and not sureties. And we do not feel warranted by the present record in ruling that the court committed reversible error in withdrawing the question of suretyship from the jury. It is to be understood, however, that we do not so far prejudge the facts as to declare or intimate that in another trial the court should at all events withdraw the question of suretyship from the jury.

After a careful consideration of the further point involved, we are of the opinion that it could not be said that the evidence so conclusively established an agreement between the payee and the principal to give an extension of time for the payment of the note as to warrant the ruling, as a matter of law, that there was such a valid agreement of extension of time as to operate the discharge of the sureties from their undertaking.

[6] And, in order to say that the court did not err in peremptorily instructing the jury to find that the sureties were discharged, it would have to be said that the evidence conclusively established that there was an agreement to give extension of time, or that such agreement, if any, had the legal effect to give an extension of time.

[7] It can be conceded that it is the well-established rule that if by a valid agreement the payee in the note, without consent of the surety, gives an extension of time for the payment of the note, such agreement operates to discharge the surety from his undertaking. It is because the payee in the note is under the duty to the surety to not increase his hazard or do any act without the surety's consent that would place it out of his power to bring suit if called on by the surety to do so.

[8] And it is also the well-known rule that ordinarily the payee in the note, in order to preserve his rights against the surety, is not bound to active diligence, and if he only remains passive his rights are not impaired. It is not contended that there was any agreement expressly stipulating that the note sued

on should be extended for any definite time.

[9] The contention that there was an understanding and intention between the bank and the principals to extend the time of payment of the note, and that the necessary implication of the terms of the understanding was to extend the time for a reasonable time longer, is founded upon the conversation and statements passing between the president of the bank and certain officers of the ice company, and Powers & Reed. The ice company was negotiating a sale of its plant to Powers & Reed, and Powers & Reed were intending to purchase. As a part of the purchase price, Powers & Reed were to assume the payment of certain indebtedness owing by the ice company, a part of which amount was the note in suit, and another note, not in this suit, owing the bank. The latter note was executed at a time subsequent to the note in suit, and the appellees were not sureties on it. This note was secured by personal security and by a chattel mortgage on certain of the property of the ice company, and this mortgage also provided a security on the same property to secure the payment of the note in suit. It does not affirmatively appear that this mortgage was accepted by the bank in lieu of or as additional of the liability of the appellees. The conclusion is inferable that the mortgage was taken for the indemnity of the sureties themselves. It does affirmatively appear that the bank was standing on and holding and solely relying on the suretyship of the appellees as in the first instance in payment of the note sued on. In the negotiations of purchase with the officers of the ice company, Powers & Reed refused to close the deal until information and understanding were had as to the proposed action by the bank in foreclosing the mortgage, which seems to have been due. To that end and for that purpose the certain officers of the ice company and Powers & Reed went to the president of the bank and informed him of their intent and purpose and negotiations. The president, it appears, stated to them, in effect, that the bank would be lenient about enforcing the mortgage and would not foreclose it immediately. As to whether this statement made by the president was intended and understood as being a distinctive agreement between the parties that the bank would not foreclose immediately, or whether it was intended and understood as being a mere statement that the bank would remain passive and inactive unless the sureties on the note demanded action, is dependent upon other circumstances at the time. Powers & Reed reasonably understood the statement to be an agreement that reasonable time longer was granted before the mortgage would be foreclosed. They had stated to the president that they would refuse to buy the plant until the bank agreed to be lenient as to foreclosing the mortgage. And upon the statement that the bank would be lenient they at once closed the deal with the ice company and assumed to pay the indebtedness. The bill of sale from the ice company to Powers & Reed recited that Powers & Reed, the purchasers, assumed to pay the indebtedness, specifying it. It appears that the president understood and meant to be understood as stating that the bank would continue as it had been in being lenient about foreclosing the mortgage. The bank, it appears, had no concern in the bill of sale made. The president gave it as his opinion that he felt morally and in good conscience bound to allow Powers & Reed, upon his statement, a reasonable time after the opening of the ice season, then soon to begin, before foreclosing the mortgage. But he emphatically states that he had no definite arrangement or agreement with the ice company or with Powers & Reed to not foreclose the mortgage or to extend the time. The evidence further goes to show that during the conversation Powers and H. Guinn wanted the bank to agree to surrender the note in suit and the $1,000 note and take the substituted notes of Powers & Reed, and this the president refused to do. There is no conflict in the testimony that the bank refused to release sureties on the first note and take other security or a substituted note in its stead. It affirmatively appears that at the time the bank was standing on the note and insisting on it as made and signed in the first instance. It does not appear that the bank accepted the undertaking of Powers & Reed in their assumption of the debts of the ice company. So, under the testimony, it appears that the inquiry of Powers & Reed and the ice company and the statements of the president were related and understood to be related to action with reference to foreclosing the mortgage, and that it appears that the bank was refusing to agree to any change as to the note in suit. If this be the proper interpretation of the evidence (and the jury would be warranted, we think, in so saying), then it could not be said that the evidence conclusively established an agreement to extend the time of payment of the note. The note in suit in the first instance was not secured by the mortgage as to the bank, and it appears to be conclusive from the evidence that the bank did not subsequently accept it as additional security along with the security of the signers of the note.

[10] And unless it conclusively appears that the bank had accepted the mortgage as a part of the security, as it did not so appear, then any agreement of the bank, if there was one, as to extension of such mortgage, would not be such binding contract as to the note in suit as would prevent the bank from the next day suing on the note to personal judgment if demanded by the sureties. Neither Powers & Reed nor the ice company could legally interpose and prevent such suit. The fact that the mortgage was taken as indemnity for the sureties, and that it was extended, if so, would afford no legal

reason why the bank could not have proceeded to suit, if demanded, the next day, or at any time, on the note in suit.

[11] And if· the evidence did not conclusively show, as it did not, that the bank had accepted the undertaking of Powers & Reed as to the note in suit, then there would be no new obligation in extinction of the note sued on. And other reasons based upon the evidence could be further given why a peremptory instruction should not have been given.

The judgment was ordered reversed, and the case remanded for another trial.

WILLSON, C. J., not sitting.