## CRUSE v. GAU.   (No. 97.)

(Court of Civil Appeals of Texas. Beaumont. Feb. 16, 1917. Rehearing Denied March 7, 1917.)

1. PRINCIPAL AND SURETY ⊛161 — DISCHARGE OF SURETY—EXTENSION OF TIME — SUFFICIENCY OF EVIDENCE.

Evidence *held* to sustain a verdict that the time for paying a note was extended without a surety's consent.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 85, 439–441.]

2. PRINCIPAL AND SURETY ⊛104(1) — DISCHARGE OF SURETY—EXTENSION OF NOTE.

A surety on a note is discharged from liability by an extension thereof without his consent.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 186.]

3. PRINCIPAL AND SURETY ⊛130 — DISCHARGE OF SURETY—WAIVER.

Where a surety on a note had been discharged by an extension of time to the maker, an alleged letter written by the surety to the payee could not operate to reinstate the obligation, where the payee never received the letter and it was never acted upon.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 373–376.]

4. PRINCIPAL AND SURETY ⊛155 — ACTION AGAINST SURETY — PLEADING — WAIVER OF DISCHARGE.

In an action against the surety on a note who had been discharged by an extension of time to the maker, waiver of the discharge by the surety, if relied on, must be pleaded.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 422.]

5. PRINCIPAL AND SURETY ⊚⟶106 — DISCHARGE OF SURETY — AGREEMENT NOT TO SUE.

An agreement not to sue on a note for 90 days constituted an extension thereof discharging the surety.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 211, 212.]

6. APPEAL AND ERROR ⊚⟶843(2)—NECESSITY OF DECISION.

Where a defendant surety was discharged by extension of a note without his consent, it is unnecessary to decide whether failure to sue thereon within a certain time also discharged him.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3331.]

Appeal from District Court, Jefferson County; W. H. Davidson, Judge.

Action by Paul Gau against W. A. Meagher and others. Judgment for plaintiff, and defendant W. W. Cruse appeals. Judgment reversed and entered for appellant.

W. G. Reeves and Oliver J. Todd, both of Beaumont, for appellant. G. P. Dougherty, of Houston, and Sol E. Gordon, of Beaumont, for appellee.

BROOKE, J. Paul Gau filed this suit in the district court of Jefferson county against W. A. Meagher, T. F. Meagher, S. H. Van Wormer, and W. W. Cruse, to recover upon a promissory note for $1,000 executed by T. F. Meagher, in which it was alleged that the other defendants became principal obligors upon the note by reason of their having executed the same before delivery, which said note was alleged to be due and unpaid, and plaintiff sought to recover the principal and interest due thereon, together with 10 per cent. attorney's fee upon said principal and interest.

Defendant Cruse demurred generally, admitted the execution of the note by Meagher, and that he signed the same, but denied that he ever became liable thereon as an original maker or otherwise, denied that he ever received any of the proceeds of the note, or was interested in the same, except as surety for T. F. Meagher, and, further, that plaintiff, by a valid contract, without the consent of the defendant Cruse, extended the time of payment of said note for a period aggregating two years, and that Cruse was not informed and had no knowledge that said note had not been taken up by the principal obligor at its maturity, and that on May 10, 1913, when first informed that the note was not paid, he wrote the attorneys for plaintiff that he did not desire them to grant any more extension of time for the payment of said note, and that he would not remain responsible if they extended the time for payment further; that thereafter, on May 13, 1913, plaintiff, notwithstanding said notice, for a good and valuable consideration, without this defendant's consent, granted a further extension in the time for the payment

of said note; that by the several extensions and each of them this defendant, as surety, was discharged.

Plaintiff by supplemental petition demurred generally, and denied that plaintiff, or any one with his authority, ever extended the note, denied the allegation of Cruse that he was uninformed that the note was not paid at maturity, and averred that Cruse knew said facts, denied that Cruse made any written demand to bring suit in accordance with the law, and denied that Cruse was released by any extension, and again denied that any valid extension agreement was made.

Defendant filed a supplemental answer, and demurred generally to the supplemental petition, and reiterated that he had given such notice under the statute requiring plaintiff to file suit, but that plaintiff, in total disregard of the notice, ignored the demand, refused to sue, and thereafter made a valid extension of the note.

The note sued on, with its indorsements, is as follows:

"$1,000.00. Beaumont, Texas, May 3, 1911.

"On or before the 3d day of November, 1911, after date, I, we, or either of us promise to pay to the order of Paul Gau one thousand ($1,000.00) dollars, together with interest thereon from date hereof at the rate of ten per cent. per annum until paid, payable at the office of the First National Bank of Beaumont for value received. All past due interest on this note shall bear interest at the same rate as the principal from the maturity thereof until paid.

"And in the event default is made in the payment of this note and it is placed in the hands of an attorney for collection, an additional amount of ten per cent. shall be added to the same as collection fees.

"The drawers, sureties, or indorsers hereby severally waive presentation for payment, protest and notice of protest for nonpayment of this note, and also waive all delays in collection hereof.

"Due Nov. 3, 1911. T. F. Meagher.
"Beaumont, Texas.
"249 Sureties: S. H. Van Wormer.
"W. W. Cruse."

"Indorsements:
"(1 year)
"Interest paid to Nov. 3, 1911—50.00. [Notation by bank.]
"Interest paid to Nov. 3, 1912—102.50. [Notation by Hugh Jackson.]
"May 15, 1913, collected from Dougherty for interest. [This notation is in the handwriting of Hugh Jackson.]"

It is undisputed by the note itself, and as testified by Judge Cruse, that the note was executed by said Cruse as a mere surety for T. F. Meagher. The note, having matured on November 3, 1911, was not paid, and plaintiff gave no notice of nonpayment to the surety, Cruse, and said surety had no notice or intimation of the nonpayment until he was notified thereof by notice from plaintiff's attorneys, dated May 7, 1913. This letter is as follows:

"Beaumont, Texas, May 7, 1913.

"Mr. W. W. Cruse, City—Dear Sir: The note given by T. F. Meagher on May 3, 1911, to Paul Gau, for $1,000.00, due November 3, 1911, upon which you appear to be a surety,

has been placed in our hands for collection with instructions to institute suit upon same.

"This note matured on November 3, 1911, and was extended one year and the note has been floating along since the expiration of the extension.

"We thought that as a matter of courtesy we should notify you that we have the note for collection with instructions to institute suit upon the same.

"Yours very truly."

Prior to receiving this letter Meagher had told the witness that he had taken care of the note, which witness had understood to mean that he had paid it.

On May 9, 1913, defendant Cruse wrote plaintiff's attorneys as follows:

"May 9th, 1913.

"Messrs. Dougherty & Gordon, City—Gentlemen: Replying to your favor as regards the Paul Gau note of T. F. Meagher, upon which I was indorser, beg to say that I supposed this note was paid when due and did not know anything about any extensions of same. But I have seen Mr. Meagher to-day, and he says that he has arranged with you to take this note up and release me entirely from same.

"Yours very truly."

To this letter counsel for plaintiff replied on May 10, 1913, as follows:

"Beaumont, Texas, May 10, 1913.

"Judge W. W. Cruse, City—Dear Sir: I return you your letter with memorandum thereon written by Mr. Hugh Jackson about the note of Mr. Meagher, now in our hands for collection. We sent this letter to your office twice to-day, but you were not in and we were unable to present it. We are acting in this matter under instructions from Mr. Hugh Jackson, and will make such disposition of the matter as may be directed by him.

"Yours very truly, Dougherty & Gordon."

As to the memorandum attached and referred to in the above letter of Mr. Cruse, he stated that he had searched for the memorandum, but could not find it. He testified however, that the notification was that, unless the interest and attorney's fees on the note were paid before 6 o'clock, suit would be filed; that the notice was the cause of witness answering as he did in his reply, dated May 10, 1913, as follows:

"May 10, 1913.

"Messrs. Dougherty & Gordon, City—Gentlemen: Further replying to your favor as regards the Paul Gau note of Mr. T. F. Meagher, upon which I am one of the indorsers, dated May 3, 1911, as I said before, I supposed this note had long since been paid. I do not desire that you grant any more extension of time for payment of this note, and will not remain responsible if you extend the time of payment further.

"Yours very truly."

The defendant Cruse testified that he wrote both letters, stamped, and mailed them. Plaintiff's counsel Dougherty testified that he never got the letter written by Judge Cruse dated May 10, 1913, above set forth, and that he never heard of such a letter until defendant filed such an answer herein.

Plaintiff's counsel Sol E. Gordon testified that he never did see said letter, and never heard of it being written or of its existence at any time before it was set up in the pleading of this case.

Miss Goldie Stern, stenographer for the firm of Dougherty & Gordon, was placed on the stand by plaintiffs, and testified that she never did see the original of said letter in their office.

It is likewise stated by counsel that they denied that they ever received this letter, and propose to show that they never got the original.

Judge Hugh Jackson testified as follows:

"That he will not say, that he had not extended notes, and taken half the attorney's fees for the extension, because when he has a man whom he thinks is perfectly good, he will extend it; that it was two or three months after the money collected from Meagher at the time of the extension of this note from Dougherty before witness got the notice from the bank that it had been deposited; that Mr. Dougherty would go ahead and collect those notes and put it on his books, and some convenient time, he thinks some two or three weeks afterwards, he would get notice that it was deposited, then he would put the credit on the note; that is what he intended to do, but on this note he doesn't say that it is so, because he entered it on the date that Mr. Dougherty said he collected it, and the owner of the note should have credit from the date the payment was made, and not the date when he received it; that he didn't remit the money to Mr. Gau, because he keeps a running account with him, and pays his taxes, but he did give him credit for it, and if he had the time to look up the books, he can tell when he received the money; that he didn't notify Gau when the interest was paid, but renders him an account once a month, and pays his taxes and collects rents on his lands in this county; that Gau has 80 acres of rice land in this county, and witness keeps a little running account, and reports to him once every month, sometimes twice a month if witness thinks there is anything he would like to know about it; that he never knew anything about the status of the Meagher note except what Mr. Dougherty showed him, and Dougherty never showed him the note; that Dougherty did tell him that he had given Meagher some more time, and that he collected some money on it, and that witness went out and never said a word to him; witness told Dougherty to sue on it, but that probably he had better let the sureties know first, because maybe they would pay it; that witness told Dougherty that he would have to have the interest and attorney's fees or sue on it; that witness didn't want Dougherty to sue if he could help it; that witness had not seen Gau, it seems to him, for eight or ten years; that he lives down at what they call Double Bayou; that he is not a relative of witness, and is a German; that witness don't sit down and write him a letter every time he gets in money, but puts it on the books; if he pays any taxes for him, he charges him with it, and about once a month on an average he sends him an account, just as a merchant would send out an account at the end of each month; witness thinks the note matured on the 11th day; witness does not think he ever wrote the sureties anything about it; that Meagher always said he was going to pay it, and witness just let the thing go on; he did it in deference to Mr. Meagher; that witness himself had carried the note some fifteen months after its maturity for Meagher before he turned it over to the attorneys; it may have been longer; witness just let it run along, and tried to do his best to keep from suing him; that Meagher made payments to him to November 3, 1911, and to November 3, 1912; he thinks it was paid to the bank; that he thinks the six months' interest was all the money that Meagher gave him; that the first credit was paid to the bank, and the other payment dated May 3, 1912, was

a years' interest that was paid after witness took it out of the bank; Meagher failed to make another payment six months after it fell due, so after it fell due he came and paid witness the $50; that was after its maturity, and Meagher failed to pay the other six months' interest, and finally the bank sent it over to witness; that when Meagher paid the first six months' interest he probably told witness that he could not pay the principal, and witness told him that he would let it run. Witness said that he would take it up at any time and everywhere; that witness might have told him he would let it run another twelve months if Meagher would take it up then; that he tells all those fellows that he will let it run; of course, Mr. Meagher would probably want three months or six months, and witness would say, 'All right, Mr. Meagher, if you can't pay it, I don't want to sue you on it; let it run along.' Witness stated that he don't think he ever did notify the sureties; if he did, he sent word through Mr. Meagher, and that he would tell witness all the time that he had told them. Now whether he did or not witness doesn't know; Mr. Cruse says he didn't."

It appears from Judge Jackson's testimony that his acts were reported to Gau in monthly statements. The case was tried on special issues, and the issues submitted by the court are as follows:

"Special Issue No. 1. Do you find from a preponderance of the evidence that at any time between November 3, 1911, and May 7, 1913, Hugh Jackson, as agent for plaintiff, Paul Gau, and the defendant T. F. Meagher entered into an agreement relative to the note in controversy, by the terms of which agreement said Hugh Jackson, as agent for plaintiff, for a consideration other than past-due interest, agreed to postpone the collection or payment of said note for a definite length of time, and that thereby said T. F. Meagher agreed that he would pay the interest on said note until the expiration of such definite period, and during which time the plaintiff should not demand payment of said note? Let your answer be 'Yes' or 'No' as you find the facts to be."

In answer to issue No. 1: "We answer Yes."

"If you answer the above question 'Yes,' then you will answer question No. 2, but if you answer question No. 1 'No,' then you need not answer question No. 2.

"Special Issue No. 2. From all the facts and circumstances in evidence before you, did the said defendant W. W. Cruse by his letter to Dougherty & Gordon of May 10, 1913, if he wrote the same, intend to thereby waive or acquiesce in any previous extension, or extensions, that may have been granted, if any, by Hugh Jackson, to the said T. F. Meagher? Let your answer be 'Yes' or 'No' as you find the facts to be."

In answer to issue No. 2: "We answer Yes."

"Special Issue No. 3. Do you find from a preponderance of the evidence that G. P. Dougherty and T. F. Meagher, on or about the 13th day of May, 1913, for a valuable consideration, other than past-due interest or attorney's fees, entered into an agreement by which the said Dougherty was not to collect or demand payment of the note sued on and by which the said T. F. Meagher was to pay interest on the note sued on for the term of 90 days from and after May 13, 1913, or do you find therefrom that said F. P. Dougherty and T. F. Meagher at or about said time made an agreement by which the said Dougherty would postpone filing suit on said note for 90 days, and that within the said 90 days said T. F. Meagher was to pay said note, together with the interest thereon until the time of such payment? Answer as you find the facts to be. If you find that said Dougherty and Meagher made the agreement first inquired about in the preceding interrogatory, by which

said note was not to be collected or paid until the expiration of 90 days, and that said Meagher was to pay interest for said full period, then you will answer question No. 4; but, if you find that they made the agreement inquired about in the latter portion of the next preceding interrogatory, that is, that said Meagher was to pay the note within 90 days, with interest only until such payment, then you need not answer the following question."

In answer to issue No. 3: "We find that G. P. Dougherty made an extension agreement with T. F. Meagher for 90 days and was not to demand payment before that time, but Meagher was at liberty to make payment before that time with interest until paid."

"Special Issue No. 4. Do you find from all the facts and circumstances in evidence before you that said G. P. Dougherty was authorized, instructed, or permitted by Hugh Jackson, as agent for the plaintiff, to make such agreement, or do you find that Hugh Jackson, as agent for the plaintiff, with knowledge of the transaction between G. P. Dougherty and T. F. Meagher, agreed to, ratified, or acquiesced in such agreement? Answer both sections of this question, and let your answers show what you find the facts to be relative to each portion thereof."

In answer to issue No. 4: "We find that G. P. Dougherty was permitted by Hugh Jackson, as agent for the plaintiff, to make such an agreement. We find that Hugh Jackson, as agent for the plaintiff, with knowledge of the transaction between G. P. Dougherty and T. F. Meagher, ratified or acquiesced in said agreement."

The defendant Cruse requested a peremptory instruction in his favor, which was refused by the court, and exception reserved.

Both plaintiff and defendant Cruse requested the court to enter judgment in their favor on the verdict of the jury. The court refused to enter judgment for said defendant, but entered judgment for plaintiff. Defendant Cruse filed an original motion for new trial, and an amended motion, which was overruled, whereupon he gave notice of appeal, and filed supersedeas bond, and the cause is properly before this court for adjudication.

[1, 2] The first assignment of error is based on the refusal of the court to enter judgment for the defendant W. W. Cruse, and in entering judgment in favor of Paul Gau, and complaining that the plaintiff here, without the consent of the defendant Cruse, who was merely a surety, did, by a valid agreement, for a valuable consideration, extend the time of payment of said obligation, and, in effect, made a new contract with the principal obligor, T. F. Meagher, to which the said Cruse was not a party, and by which he was not bound, and the judgment of the court is, in effect, a judgment against W. W. Cruse for an obligation to which he was not a party.

There is no doubt, from the indorsements on the note, and from the other undisputed facts, that the note was extended without the knowledge or consent of Cruse, and, as found by the jury, for a valuable consideration, other than past-due interest, and for a definite time, during which plaintiff should not demand its payment, the effect of which amounted to the making of a new contract, and the further effect of which was a dis-

charge of Cruse as surety on the note. The notation on the note itself evidenced the extension, and Meagher says himself that the note was extended a. few times between November 3, 1911, and May 13, 1913.

It occurs to us that it would be a work of supererogation to cite authorities to uphold the view of this court as above expressed, but we cannot refrain from quoting from an opinion rendered by Chief Justice Gaines of the Supreme Court in the case of Benson v. Phipps, 87 Tex. 578, 29 S. W. 1061, 47 Am. St. Rep. 128, as follows:

"The plaintiff was a surety for one Hosack, the principal maker upon a promissory note payable to the defendant in error. Some days after the note fell due Hosack wrote defendant in error requesting an extension, to which request the defendant replied by letter as follows: 'I will extend the time of payment one year, and look with confidence for the accrued interest within 60 days, hoping it will not inconvenience you. After that, if it is your pleasure to make the interest on the extension payable semiannually, it will help me.' The defendant in error testified to having received the letter from Hosack requesting an extension, and that the foregoing was his reply, but the contents of Hosack's communication were not otherwise shown. He also testified that he was paid nothing for the extension, and that Hosack never paid the accrued interest. Suit having been brought on the note by the payee against all the makers, the plaintiff in error pleaded his suretyship; and, the facts as stated above having been proved, the trial court gave judgment for the plaintiff in that court. That judgment upon appeal was affirmed by the Court of Civil Appeals.

"It is the right of the surety, at any time after the maturity of the debt, to pay it, and to proceed against the principal for indemnity. This right is impaired if the creditor enter into a valid contract with the principal for an extension of the time of payment. The obligation of the surety is strictly limited to the terms of his contract, and any valid agreement between the creditor and the principal, by which his position is changed for the worse, discharges his liability. For this reason it is universally held that a contract between the two, which is binding in law, by which the principal secures an extension of time, releases the surety, provided the surety has not become party to the transaction by consenting thereto. If the creditor is not bound by his promise to extend, it is clear there is no release. In order to hold him bound by his promise, there must be a consideration. Whether a mere agreement for an extension by the debtor is sufficient to support a promise to extend by the creditor is a question upon which the authorities are not in accord. We are of opinion, however, that the question should be resolved in the affirmative, at least in cases in which it is contemplated by the contract that the debt should bear interest during the time for which it is extended. If the new agreement were that the debtor should pay, at the end of the period agreed upon for the extension, precisely the same sum which was due at the time the agreement was entered into, the case might be different. But a promise to do what one is not bound to do, or to forbear what one is not bound to forbear, is a good consideration for a contract. In case of a debt, which bears interest either by convention or by operation of law, when an extension for a definite period is agreed upon by the parties thereto, the contract is that the creditor will forbear suit during the time of the extension, and the debtor foregoes his right to pay the debt before the end of that time. The latter secures the benefit of the forbearance; the former secures an interest-bearing investment for a definite period

of time. One gives up his right to sue for a period, in consideration of a promise to pay interest during the whole of the time; the other relinquishes his right to pay during the same period, in consideration of the promise of forbearance. To the question why this is not a contract we think no satisfactory answer can be given. It seems to us it would be a binding contract, even if the agreement were that the debt should be extended at a reduced rate of interest. That an agreement by the debtor and creditor for an extension for a definite time, the debt to bear interest at the same rate, or at an increased, but not usurious, rate, is binding upon both, is held in many cases, some of which we here cite. * * *

"In many cases which, seemingly support the contrary doctrine there was a mere promise by the creditor to forbear, without any corresponding promise on part of the debtor not to pay during the time of the promised forbearance. In such cases it is clear that there is no consideration for the promise. In others, where there was a mutual agreement for the extension, it may be that interest during the period of extension * * * did not provide for the payment of interest. * * * In this case, as we construe the correspondence between Hosack and the defendant in error, there was a request for an extension of the debt for 12 months on part of the former, and an unconditional acceptance on part of the latter. We infer that Hosack must have written something about the payment of accrued interest, probably that he hoped to be able to pay in 60 days. The presumption is that the letter was in the possession of the defendant in error at the time of the trial. He did not produce it. In any event he should have known its contents, and, if Hosack made his request for an extension conditional upon his payment of the accrued interest, he should have testified to the fact. We conclude, therefore, that there was a binding promise for an extension, and that the plaintiff in error was therefore released."

For further authorities see Burke v. Cruger, 8 Tex. 67, 58 Am. Dec. 102; Wybrants v. Lutch, 24 Tex. 309; Pilgrim v. Dykes, 24 Tex. 384; Lane v. Scott, 57 Tex. 367; Ryan v. Morton, 65 Tex. 258; Mann v. Brown, 71 Tex. 241, 9 S. W. 111; Wylie v. Hightower, 74 Tex. 306, 11 S. W. 1118; Clark v. Cummings, 84 Tex. 610, 19 S. W. 798; Benson v. Phipps, 87 Tex. 578, 29 S. W. 1061, 47 Am. St. Rep. 128; Durrell v. Farwell, 88 Tex. 98, 30 S. W. 539, 31 S. W. 185; Kearby v. Hopkins, 14 Tex. Civ. App. 166, 36 S. W. 506; Zapalac v. Zapp, 22 Tex. Civ. App. 375, 54 S. W. 938; Marshall Nat. Bk. v. Smith, 33 Tex. Civ. App. 555, 77 S. W. 237; First Nat. Bank of Rusk v. Rusk Pure Ice Co., 136 S. W. 89; Red River Bank v. Bray, 105 Tex. 312, 148 S. W. 290; McKaughan v. Baldwin, 153 S. W. 660; Central Bank & Trust Co. v. Hill, 160 S. W. 1099.

[3, 4] The second assignment of error challenges the action of the trial court in rendering judgment for the plaintiff upon the verdict of the jury, in failing and refusing to render judgment in favor of the defendant W. W. Cruse, and in finding and holding that the writing of a letter by W. W. Cruse which was never received by the plaintiff or his attorneys was never acted upon by them, was without consideration, and could not, in law, have raised an estoppel, operated to reinstate an obligation against W. W. Cruse,

which had theretofore been terminated and discharged by the act of the plaintiff. The proposition under this assignment is:

"No judgment can be predicated upon the alleged fact of the defendant Cruse having waived his former discharge by writing the letter of May 10, 1913."

The statement in the letter is in the following language:

"I do not desire that you grant any more extension of the time of payment of this note, and will not remain responsible if you extend the time of payment further."

This language was specially pleaded by Cruse as a notice to sue, under the statute, which he claims was sufficient to require the plaintiff to institute suit. However, the plaintiff denies that there was ever any such letter. Counsel for plaintiff, Judge Dougherty, testified that he never got the letter written by Cruse on the 10th of May, 1913, in which the above language is used, and that he never heard of such a letter until the defendant filed his answer. Plaintiff's counsel Judge Gordon testified that he never did see said letter, and never heard of it being written, or of its existence at any time before it was set up in the pleadings. Miss Goldie Stern, stenographer for the firm of Dougherty & Gordon, testified that she never did see the original of said letter in their office. The statement of facts shows that counsel denied that they ever received the letter.

Taking the above sworn statements as true, the Cruse letter containing the allegations was never received, and was never acted upon, and could not, in law, have raised an estoppel. We search the pleadings, which are very voluminous, in vain, to discover if the above language or letter, or any portion thereof, was pleaded as a waiver, and, so far as we can see from this record, there was nothing to base an issue as to whether or not it constituted a waiver of Cruse's former discharge from the note. Instead of pleading or alleging that the letter was a waiver, plaintiff denied specifically that such a letter had ever been written, or that they had ever received the same. The view we take of the matter is that there can be no issue without pleading, as correctly contended by appellant, and consequently no judgment could be rendered which is unsupported by the pleadings, even though facts proven to justify the same. Perhaps it will be well for us to cite, while we assume that the above is a well-settled legal proposition, some of the numerous cases in which it has been held that a waiver, when relied upon, must be set up, that it must amount either to an agreement or to an estoppel, and that in the latter case the acts, representations, and conduct which have been acted on and relied upon shall be stated with reasonable certainty. Tex. Banking Co. v. Stone, 49 Tex. 13; Insurance Co. v. Dwyer, 1 Posey, Unrep. Cas. 449; Texas Banking Co. v.

Hutchins, 53 Tex. 61, 37 Am. Rep. 750; East Texas Fire Ins. Co. v. Brown, 82 Tex. 631, 18 S. W. 713; Insurance Co. v. Lacroix, 45 Tex. 158; Sun Mut. Ins. Co. v. Texarkana Foundry & Mach. Co. (Tex. App.) 15 S. W. 34; United Firemen's Ins. Co. v. Thomas, 82 Fed. 406, 27 C. C. A. 42, 47 L. R. A. 450; Thurston v. Ludwig, 6 Ohio St. 1, 67 Am. Dec. 328; Ripley v. Insurance Co., 30 N. Y. 136, 86 Am. Dec. 369; Crandall v. Mosten, 24 App. Div. 547, 50 N. Y. Supp. 145.

The following proposition is made by appellant, under this assignment:

"There can be no waiver of an existing legal right, except by a new contract, based upon a new and independent consideration, or by such conduct on the part of the party against whom the waiver is asserted, relied on by the other party to his prejudice, as will create an estoppel, and; there being no evidence whatsoever either of a new contract or of an estoppel in this case, the trial court was without justification in law in holding the defendant Cruse responsible for the payment of the obligation by reason of his having written a letter which plaintiffs never got telling the plaintiffs not to grant any further extension."

We believe this contention of the appellant is correct, and that the court was in error, and therefore we sustain the assignment.

[5] The third assignment is:

"The court further erred in rendering judgment in favor of the plaintiff, and in failing and refusing to render judgment in favor of the defendant, because under the verdict of the jury and the uncontroverted evidence the plaintiff released the surety, W. W. Cruse, by an extension duly entered between himself and the principal obligor, T. F. Meagher, which extension was duly indorsed upon the note, and was made under the uncontroverted evidence without the knowledge or consent of the defendant W. W. Cruse."

The note, under the undisputed facts in the case, was extended 90 days from May 13, 1913, and the jury, in answer to special issue No. 3, heretofore set out, in answer to a direct question, found that Dougherty and Meagher entered into an agreement by which Dougherty was not to collect or demand the payment of the note sued on, and by which the said Meagher was to pay nothing on the note for the term of 90 days from and after the date, May 13, 1913.

Having already passed upon the second assignment, to the effect that there was no waiver by the letter of Cruse, and by our conclusion under the first assignment, that there had been a valid extension for a valuable consideration, it would seem unnecessary to review this assignment. However, we will say that it is shown by the note itself, by the testimony of the parties, and the verdict of the jury that plaintiff bound himself not to sue for 90 days from May 13, 1913, and we believe, under the authorities above quoted, and the authority of McKaughan v. Baldwin, 153 S. W. 660, that said agreement was an extension, and discharged the surety.

[6] By the fourth assignment of error the judgment of the lower court is called in question in rendering judgment for the plaintiff and in failing and refusing to render judgment for the defendant W. W. Cruse, because said W. W. Cruse was discharged from said obligation by failure and refusal of the plaintiff to sue upon said note either at the first or second term of said court, after W. W. Cruse wrote plaintiff's counsel his letter of May 10, 1913, which letter has been heretofore referred to.

It being unnecessary to pass upon this and the remaining assignments of error, if we have been right in our holdings above, it would serve no useful purpose to decide this question, upon which a great deal might be written pro and con. Therefore, without passing on this assignment, as being unnecessary to a disposition of the case, the assignments 1, 2, and 3 are sustained, and judgment is here entered reversing the action of the lower court, and entering and rendering judgment for appellant.

It is so ordered.